# CHARLESTON. ··

BANK OF GREENVILLE V. S. T. LOWRY & Co. *et al.*

Submitted January 15, 1918.    Decided January 29, 1918.

1. BILLS AND NOTES—*Action Against Makers—Declaration—Evidence.*
   The declaration in an action on a negotiable note against the makers thereof only need not mention such indorsers as have placed their names on the back of it, and the indorsed note is admissible under the declaration so drawn.    (p. 580).

2. SAME—*Execution—Proof—Cross-Examination.*
   Evidence of the execution of a note, elicited by cross-examination of a witness, suffices to prove it.    (p. 581).

3. WITNESSES—*Refreshing Memory—Copies of Accounts.*
   Copies of accounts made from the books in which they are kept may be used by a witness stating his personal knowledge of the transactions so recorded to refresh his memory, and allowed to go to the jury with his evidence as memoranda.    (p. 581).

4. PARTNERSHIP—*Authority of Parties—Indorsing Name of Copartner—Evidence.*
   On an issue as to whether a partner had authority to indorse the name of his copartner on a firm note executed by the former, the habit or custom of the latter to have others write his name on his and the firm's commercial paper is admissible as evidence.    (p. 581).

5. APPEAL AND ERROR—*Harmless Error—Admission of Evidence.*
   Admission of proof of an immaterial, but wholly uncontradicted, fact, causing no controversy or confusion in the trial, nor any prejudice to any of the parties to the action, is harmless error.    (p. 583).

6. TRIAL—*Instruction—Request.*
   A request for an instruction having no foundation in the evidence is properly refused.    (p. 584).

7. APPEAL AND ERROR—*Harmless Error—Instruction.*
   If the appellate court can clearly see that the refusal of a proper instruction, having for its purpose confinement of the jury to the issue made in the pleadings, did not leave room for a departure from such issue in the verdict, it will treat the error as harmless and refuse to reverse for it.    (p. 584).

8. TRIAL—*Instruction—Sufficiency.* ·
   Mere incompleteness of an instruction, supplied by others, does not vitiate it.    (p. 584).

9.   BILLS AND NOTES—*Partnership Note—Duty of Purchaser.*

The purchaser of a negotiable note of a partnership, executed and discounted by a member of the firm, is not bound to exercise ordinary diligence to ascertain whether such member signed the firm name to it for the purpose of paying his individual obligation, or securing his individual debt, or procuring money for his individual purposes, and a trial court may properly refuse to instruct the jury tha tthe purchaser is under such duty. (p. 583).

10.  BANKS AND BANKING—*Request for Statement of Checking Account —Construction.*

A request made to a bank by a member of a partnership having a checking account therein, and also liable to it on a note discounted to it by the firm, for a statement of their business with it, coupled with notice of the purpose of the partners to dissolve the partnership and settle, is properly interpreted, in the light of the practice of banks called upon for statements, as a request for the status of the firm's checking account only. (p. 582).

11.  BILLS AND NOTES—*Bona Fide Purchasers—Power of Partners— Execution of Commercial Paper.*

A member of a trading partnership has implied authority to execute commercial paper of the firm, and, if he executes and disposes of it for his individual purpose, without notice thereof to the purchaser, or knowledge of facts sufficient to put him on inquiry as to it, the firm is bound, notwithstanding the improper use of the firm name. (p. 584).

12.  SAME—*Partnership—Liability—Evidence.*

On a firm note executed and discounted by one member of a trading partnership a bank may recover, although, with its knowledge, the proceeds of the note were deposited in it to the individual credit of such member. That fact alone does not relieve the other members of the firm, but it is proper matter to go to the jury, with other evidence relied upon for proof of good reason on the part of the bank for belief that such member was perpetrating a fraud upon his associates in the execution and disposition of the note, which, if found by the jury, would preclude right of recovery by the bank against his associates. (p. 586).

Error to Circuit Court, Monroe County.

Action by the Bank of Greenville against S. T. Lowry & Co. and others. Judgment for plaintiff, and defendant S. T. Lowry brings error.

*Affirmed.*

*J. A. Meadows* and *Thos. N. Read,* for plaintiff in error.

*R. L. Clark* and *Jno. L. Rowan,* for defendant in error.

POFFENBARGER, PRESIDENT:

This is a writ of error to a second judgment in a case in which all questions of pleading were settled here on a writ of error to the former judgment. *Bank of Greenville* v. *Lowry and Company,* 79 W. Va. 10, 90 S. E. 390. Only proceedings in the trial before the jury are now involved.

The declaration alleged a promise by Lowry and Stover, as partners under the name and style of S. T. Lowry & Co., to pay the Bank of Greenville, or order, for value received, the sum of $350.00, evidenced by their negotiable note for said sum. An objection to the introduction of the note, on the trial, was interposed, on the ground of improper and insufficient description, since it bore the endorsements of S. T. Lowry and N. P. Stover, not mentioned in the declaration. The same discrepancy was made the ground of a motion to exclude the note, as for a variance between allegation and proof. The allegation of the promise, found in the declaration, and the promise itself, stated in the note, are in perfect accord. Only the makers were sued, wherefore only their liability was alleged. Other matter in or on the note, not material to the obligation asserted, though capable of being made descriptive of the instrument, could properly be ignored in the pleading. "It is by no means necessary that parts of the contract should be stated which are distinct and collateral provisions, or respect only the liquidation of damages under particular circumstances without extending to absolve the defendant from responsibility." Chitty, Pl., 11th Am. Ed., Vol. 1, p. 315. "Although in general a mis-statement of any part of a contract will be fatal, in consequence of the entire nature of the contract, yet many cases may arise in which slight variations between the statement and the proof will be of no importance. We have before noticed the leading and important rule in the statement on contracts, that it will in all cases suffice, if the legal effect of the contract be stated, and that the party is not required to follow the exact words

of the contract.'' *Id.* 313.   There is no material variance and
the objection and motion were properly overruled.

Lack of proof of the execution of the note, at the time of
its admission in evidence, if any, was supplied by evidence
elicited on the cross-examination of the cashier of the bank.
Stover was admittedly a member of the firm and the cashier
swore the firm signature and endorsements were in his hand-
writing.

The three real grounds of defense seem to be alleged lack
of authority in Stover to execute and discount the note, per-
version of his agency, if any he held, to his personal advant-
age, with the bank's knowledge, and estoppel for failure to
advise Lowry of the existence of the note, in view of notice
of intention of the partners to dissolve the partnership.

Since transactions of the firm with the bank, through
Stover, one of the members, related to the note in contro-
versy, other firm notes discounted by the bank at his instance,
the firm's account with the bank and his individual account
there, he having deposited some firm money to his individual
credit and paid some firm notes in the bank with money from
his personal account, these two accounts were deemed to be
material and relevant, and, as to them, the cashier testified,
using copies thereof for refreshment of his memory, which
the court permitted the bank to file as evidence, over objec-
tions.   The authorities relied upon in support of the excep-
tions, do not sustain them.   The copies were not introduced
or filed as evidence in and of themselves.   They were mere
memoranda of the oral evidence of the cashier.   Of course,
they were not admissible as documentary evidence, upon
mere authentication, without proof of conditions warranting
introduction of the books of original entry, and inability to
produce them.

If there was duty on the part of the cashier, to ''question''
the note, when presented for discount, under all the circum-
stances, as the attorney for the defendant so earnestly insists
in his brief, his admission of non-performance of that duty,
made in his testimony, could not have prejudiced the com-
plainant.   It was evidence in his favor.

The authorities cited in support of the attack upon the

admission of the cashier's testimony to Lowry's habit or custom of having other persons sign his name to checks and other papers, on account of disinclination to write, for some reason, are not in point at all. The evidence was relevant and material, for it afforded a reason for acceptance of the note bearing signatures all in the handwriting of Lowry's partner. It was a firm note to which one partner ordinarily could subscribe the firm name, and the endorsement of which by each partner imparted little, if any, additional strength; and there was no proof of notice of lack of authority in Stover to execute it or any other note of the company. The cashier said he regarded the note as good without an endorser, wherefore the endorsements were not deemed important in his acceptance thereof. The business methods of the firm and its members, in their dealings with him and his bank, were clearly relevant and material, upon the inquiry as to whether he had knowledge of Stover's alleged lack of authority as to the note in question, or of facts sufficient to put him upon inquiry, and was bound to respect and observe it.

Before the members of the firm made their settlement as to rights and liabilities devolved upon them by the dissolution, they sent A. C. Riffe, a disinterested party, to the bank for information. He brought back a memorandum of the balance due them from the bank, but no information or notice of their liability on the note, and they seem not to have taken it into consideration in their settlement. Riffe notified the cashier of the intended dissolution and says he told him Lowry had sent him there "for a statement from the bank of his and Mr. Stover's business," for use in their settlement. The cashier was unable to recall Riffe's words on the occasion and, over an objection, the court permitted him to testify that he understood Riffe to say he wanted to know what money the firm had in the bank. He further said he knew Riffe did not ask anything about the note, for, if he had, he would have given it to him, meaning he would have reported it as well as the balance due on the account. The objection was not well taken. It was proper to let the witness state his recollection as to what he understood the messenger had asked for. He used the word "understanding" to express his interpreta-

tion of the message, at the time of the receipt thereof, as he·  . remembered that interpretation at the date of his testimony, not to express a mere opinion or surmise as to the purport of· the message. He had clear right to act upon it as he honestly understood it. Ambiguity or obscurity in its terms, if any, as delivered, producing a misunderstanding, was the fault of the defendants, the messenger having been their agent. From the· right to act upon his honest understanding, the right to put it in evidence by his testimony necessarily follows.

The objection to proof of the bank's rendition of state-- ments of checking accounts, without noting liabilities to it on undue notes, as a usage, custom or practice, in its dealings; with its patrons, is not well taken. It must have been known to the defendants, for their own firm account had been so· rendered on three occasions, before they made the inquiry through Riffe.

What McNeer said concerning the quantity of wheat the· defendants had and their manufacturing it, may have been immaterial, but, if so, it was clearly harmless. It occasioned. no confusion in the trial, for it was not denied. An inquiry as to whether it was technically admissible would subserve no, useful purpose.

The offer to prove the defendants had no reason for bor- rowing money, at the time of the discounting of the note, was. properly rejected. Their small balance in the bank at that time signified nothing as to their purposes and intentions, in-- volving the use of money, and there was no offer to prove the· bank had any knowledge of their affairs beyond that disclosed by their bank account and their notes held by it.

Though the bank knew, through its cashier, the firm in-- tended a dissolution and settlement, it was not bound to fur- nish the members information not called for. There is no, evidence of any specific request for information about notes. Lowry never told Riffe to ask about notes. He thought there were 'none. He had executed none himself and denied au- thority in Stover to execute any. He does not say himself he told Riffe to inquire about notes, and Riffe did not do so. The bank could well assume, in the absence of notice to the· contrary, that both members of the firm knew what notes.

they had outstanding. Hence, the court properly rejected Lowry's offer to prove he could have protected himself against the note, in his settlement, if the bank had notified him of its existence.

The elimination of so much of defendant's instruction No. 1, as would have told the jury the purchaser or taker of a firm note is bound to use ordinary diligence to ascertain whether a partner offering it signed the firm name to it for the purpose of paying his individual obligations, or securing his individual or private debt, or procuring money for his individual credit or purpose, was manifestly proper. With that out, the instruction told the jury the bank's knowledge of such fact would preclude right of recovery against the other partner. It might have gone further and assigned such preclusion of right, if the bank had good reason to believe the note was executed for individual and not firm purposes, or knowledge of facts sufficient to arouse a suspicion. As proposed, the instruction did not include this alternative proposition. After striking out the improper phrase referred to and another clause, the court gave the residue of the instruction, in the form in which it was prepared. As modified and given, it substantially stated the law enunciated in *Tompkins & Madden* v. *Woodyard,* 5 W. Va. 230, the only authority cited in support of the assignment of error, and both modifications were proper, unless the elimination of the other clause, just mentioned but not described, was an erroneous act. That part would have told the jury the admissions and statements of Stover, if any were made, under the circumstances therein stated, the making and negotiation of the note sued on, were not evidence of the assent of Lowry to the use of the firm name on the note. Total lack of evidence of such admissions and statements justified the elimination of that clause. *Parker* v. *B. & L. Association,* 55 W. Va. 135; *Kuykendall* v. *Fisher,* 61 W. Va. 87.

Defendant's instruction No. 2 was properly refused, for embodiment therein of a condition or provision for which there was no basis in the evidence, viz., the bank's knowledge of lack of authority in Stover to execute the firm's note. He had implied authority, as a partner, to do so, in the absence

of proof of a limitation thereof, known to the person to whom the paper was offered.

The court refused an instruction which, if given, would have forbidden recovery on any ground other than the express promise alleged and proved by the note. Such an instruction was approved in *Pettyjohn* v. *Bank*, 101 Va. 111, and this one might properly have been given in this case, no doubt, but the error in the refusal thereof, if any, was entirely harmless. No right of recovery was asserted, in any manner, upon anything other than the note, and all the instructions confined the jury to consideration of the note, authority to execute it and action within it. Plaintiff's instruction No. 2 submitted the question of right of recovery on the note only, and the one given for the defendant was limited to the note. All the evidence adduced pertained to the same alleged right. The jury cannot be deemed to have based their verdict upon any other ground. Manifestly they did not.

Defendant's instructions Nos. 4 and 5, were properly refused. They would have told the jury, in substance, that the plaintiff could not recover, if Stover executed the note for his individual purposes. That, if true, could not have affected the bank, unless it had notice of it, and requirement of this vital element was wholly omitted from each of them.

An untenable objection was set up to plaintiff's instruction No. 1, which told the jury any one of the partners had implied power to borrow money and give the firm mercantile paper therefor, if they believed the firm "was engaged in the milling business, buying wheat and corn and manufacturing the same into flour, meal, mill-feed and other products, though it may have done some custom grinding." Other instructions given limited the right of borrowing on firm paper to firm purposes, wherefore the omission of that limitation, from the one in question was a harmless defect, if it was a defect at all. To the extent of the terms used, the instruction was correct, and its incompleteness was remedied by others given. *State* v. *Kellison*, 56 W. Va. 690; *State* v. *Prater*, 52 W. Va. 132; *State* v. *Snider*, 81 W. Va. 522.

Stover or the cashier, at his instance, placed the proceeds of the discounted note to his individual credit in the bank, and

this fact is relied upon as being one sufficient, in and of itself, to put the bank upon notice of fraudulent intent on the part of Stover, or as proof of an act in excess of his authority as partner and agent. He had previously discounted two other notes of the firm to the bank, one for $100.00 and the other for $300.00, placing the proceeds to the credit of the firm, in each instance. He paid off the first one with his individual check, before he negotiated the $350.00 note in controversy. The $300.00 note was renewed in December, 1910, for three months. In the same month, the $350.00 note, payable one year after date was discounted. In March, 1911, Stover paid the $300.00 note out of his individual account. Out of the proceeds of the $350.00 note, he deposited $100.00 to the credit of the firm. Whether he used the balance of the proceeds of that note for individual purposes, for the time being, with the knowledge of the bank or its officers, does not appear. In paying the $300.00 note, he more than returned it.

The deposit of the proceeds of the note to Stover's individual credit, though known to the bank, does not alone preclude right of recovery by it. *Ex parte Bonbonus,* 8 Ves. Jr. 540; Wood's Collyer, Part., Vol. 1, sec. 505. In the case just cited, Lord Eldon said: "But if it is the ordinary course of commercial transactions, as upon discount, it would be monstrous to hold that a man borrowing money upon a bill of exchange, pledging the partnership without any knowledge in the bankers that it is a separate transaction, merely because that money is all carried into the books of the individual, therefore the partnership should not be bound. No case has gone to that length." This circumstance taken in connection with the others relied upon, the time allowed for payment, the individual signature of Lowry in the handwriting of Stover, the failure to give notice of the liability, in view of information of intended dissolution and other facts relied upon as affording ground of suspicion, were held, on the former writ of error, to be sufficient to warrant submission of the question of joint liability to the jury. Under that holding, the trial court submitted it, and the jury has found for the plaintiff. No ground is perceived upon which their finding

can be disturbed. The/ circumstance most earnestly relied upon has been judicially declared insufficient to prevent recovery, and the others are hardly worthy of notice. There was no duty to give notice of the existence of the note, in view of the impending dissolution. The bank could well assume the firm's knowledge of the existence of its own paper. The individual endorsements were little, if anything, more than unnecessary and formal matters, since the firm signature bound both parties.

For the reasons stated, the judgment complained of will be affirmed.                                    *Affirmed.*