# CHARLESTON.

WILSON L. LIVELY v. VIRGINIAN RAILWAY CO.

(No. 5814)

Submitted October 18, 1927.   Decided October 25, 1927.

1. JUDGMENT—*Recovery Against Coal Company for Flooding Land Held to Prevent Recovery for Same Damages Against Railroad Company Causing Overflow.*

   Where the plaintiff in an action against a railway company for damages alleged to have been the result of its negligence in constructing its railway on its right of way through and

over his lands by changing the channels of the creeks, streams and drains traversing the same, and thereby causing the waters thereof to be dammed up and to overflow said lands, and causing the refuse from the coal mines of the coal company operating on adjoining lands to be carried down and deposited by such waters on his lands, rendering them useless for cultivation, etc., and it appears from his declaration and evidence in a prior suit against such coal company, and his admissions in his subsequent suit against the railway company, that the damages sought to be recovered against it were not incurred by the previous actions of the railway company complained of, but by the subsequent negligence of the coal company, and for which he had already recovered a verdict and judgment against it, he is estopped and concluded thereby from any recovery against the railway company for the same damages, and the jury at the request of the defendant should be instructed to find for the defendant. (p. 339.)

2.     EMINENT DOMAIN—*In Absence of Pleading and Proof to Contrary, it Will be Assumed Damages From Construction Causing Flooding of Land Were Covered by Those Awarded Against Railroad in Judgment Condemning Right of Way.*

Where in such an action it is shown that the right of way of the defendant company through plaintiff's lands was acquired by the exercise of its right of eminent domain, and by condemnation proceedings against him and others, it will be presumed, in the absence of a showing by pleading and proof to the contrary, that the subsequent construction of its railway and the exercise of these rights were done in accordance with the rights condemned, and that the damages sustained and all consequential damages were fully covered by the damages awarded in the judgment of condemnation.     (p. 340.)

3.     TRIAL—*Party is Not Entitled to Instructions on Theory Not Presented by Pleadings, Nor Covered by Whole Case Presented.*

It is well settled that a party is not entitled to instructions to the jury on a theory not presented by the pleadings, nor covered by the whole case presented.     (p. 342.)

4.     EVIDENCE—*Opinion of Non-expert, no Better Qualified Than Jurors to Form Opinion, is Not Admissible.*

Where the opinion of a witness, not an expert, is offered in evidence, and he is no better qualified than the jurors to form an opinion in reference to the facts in evidence and the de-

ductions to be properly drawn therefrom, his opinion evidence is not properly admissible.   (p. 343.)

LIVELY, JUDGE, absent.

Error to Circuit Court, Fayette County.

Action by Wilson L. Lively against the Virginian Railway Company.  Judgment for plaintiff, and defendant brings error.

*Judgment reversed; new trial awarded.*

*Brown, Jackson & Knight, Williams, Loyall & Taylor, Osenton & Lee* and *Martin & Wingfield*, for plaintiff in error.

*Magee McClung, H. E. Dillon, Jr.* and *Dillon, Mahan & Holt*, for defendant in error.

MILLER, JUDGE:

This action was brought by plaintiff against defendant some time prior to September 1925 for damages sustained by the alleged wrongful acts of the defendant, particularly set forth in the two counts of the declaration.   In the·first count, it is averred that the plaintiff prior to the alleged trespass was the owner of certain tracts or parcels of land near Long Branch Station in Fayette County, bordering also on the right of way of the defendant's main line of railroad, the said right of way having been acquired from the plaintiff and others by condemnation proceedings instituted in the circuit court of Fayette County; that in grading and constructing its road-bed, defendant raised the same to an elevation of six or eight feet above the level of the surrounding lands, so that the waters from the streams, creeks, ravines, and surface water from the mountain side were thereby diverted from their regular or original courses and thrown on plaintiff's land, by reason of which wrongful acts said waters were caused to spread over practically ten acres of the fields and land of the plaintiff and to cover the same with water, and with sand, slate and other debris, rendering it unfit for agricultural purposes, all of which was theretofore very rich and valuable farm land, and constituted in fact practically all of the good farm land plaintiff possessed; whereby it be-

came necessary for plaintiff to expend, and he did expend, large sums of money and labor, amounting to $1,000.00, in draining and trying to carry off said water so unlawfully turned, diverted and discharged over and on his said land; and whereby it has now become impossible to drain said waters so discharged and diverted from their natural courses, or to remove therefrom the stone, slate, gravel and other debris so deposited, to his damage of $25,000.00.

The only cause of action pleaded in the second count, in addition to what is alleged in the first, is that defendant in building and preparing its railroad bed had constructed culverts thereunder which were insufficient in capacity to carry away the waters; and whereby they were dammed up and diverted from their regular course and overflowed plaintiff's said land, rendering it unfit and useless for cultivation; whereby plaintiff was damaged in the manner alleged in the first count thereof.

The defendant's pleas were not guilty, and a plea in bar, that the judgment obtained by plaintiff in a former suit against the Long Branch Coal Company was for damages for substantially the same injury complained of in this action.

On the trial of this action in April 1926, the plaintiff recovered a verdict and judgment against the defendant for $500.00; and to that judgment we awarded the present writ of error on the petition of the railroad company. The several assignments of error relied on here are: (1) the refusal of defendant's instruction No. 8, which would have directed the jury to find for the defendant; (2) the overruling of defendant's motion to set aside the verdict and grant it a new trial; (3) the overruling of defendant's motion in arrest of judgment; (4) the giving to the jury over defendant's objections plaintiff's instructions Nos. 2, 3, 4, 5 and 6; (5) the refusal of the court to give defendant's instructions Nos. 9 and 10, and also instruction No. 4 as requested, and in modifying the same and giving it as modified; (6) in permitting plaintiff, Lively, to testify in his own behalf that the reason why the deposit remained in the mouth of Long Branch was because there was no current to carry it off as fast as it came in.

Defendant rests its defense mainly upon the proposition covered by its instruction No. 8 and presented by its first assignment of error. That instruction would have told the jury upon the pleadings and proofs introduced to find a verdict for defendant. Should the court have so advised the jury? The plea in bar referred to, to describe it more particularly, averred that the plaintiff recovered from the Long Branch Coal Company in 1924 a verdict for $750.00 which sum was paid to the plaintiff by the said coal company, and that the damages recovered in that suit were the same alleged damage and injuries complained of in this suit, and that said sum of money fully and adequately covered any and all damages sought to be recovered in this suit, and constituted a release and discharge of defendant for all the matters pleaded in this case.

On the pleadings and the evidence in this case, we are disposed to hold that instruction No. 8 should have been given for various good and substantial reasons; first, because of the admissions of fact and the judicial admissions of the plaintiff shown in the record. In his declaration in his suit against the Long Branch Coal Company, a part of the present record, he averred that the damages complained of in this case were wholly the result of the alleged negligence of the coal company in the deposit of large quantities of earth, stone, slate slack, coal and other refuse from its mines into Long Branch, a tributary of Paint Creek, and whereby the waters of said branch were dammed up and caused to overflow his lands as described. And in his testimony before the jury in the present case, he admits that after the building of the defendant's railroad through his lands, and the changing of the channel of Paint Creek, and the building of the culvert referred to in the declaration, all in 1905, and for the several years that elapsed thereafter, and up until 1914, when the acts of the coal company were committed, he had sustained no damage from overflow of the waters from the creek or other streams mentioned; and that it was not until some two years thereafter, after the said coal company had begun operations on Long Branch and above the mouth thereof, and had deposited the earth, slack, and other refuse from its mine along said

branch, and the same were washed down by the waters therein into the old channel of Paint Creek, that his lands were thereby damaged, and that he had so testified on the trial of his suit against the coal company. So that having so testified then and in this case, and having so pleaded the facts in his suit against the coal company, he is now bound by such admissions and precluded from again recovering in this action for the same damages against the railroad company.

It is alleged in the present declaration that the rights of the railroad company through the plaintiff's land were acquired by the exercise of eminent domain and condemnation proceedings. Presumably the construction of the railroad was in accordance with the petition and judgment thereon in those proceedings. There is no allegation here that the railroad was not built in accordance with the rights condemned, and that the damages awarded the plaintiff covered the land actually taken and all consequential damages that might result from a proper and reasonable exercise of those rights; and it is not alleged in the pleadings or proven that there was any departure by the railroad company from the rights acquired by the judgment in those proceedings. *Monongahela Valley Traction Co.* v. *Windom,* 78 W. Va. 390. Moreover, there is no evidence here justifying the theory that the building of defendant's railroad contributed in any way to the damages done by the subsequent negligent acts of the coal company. The very pertinent fact that no damages were sustained by plaintiff by the building of the railroad for so many years thereafter is almost conclusive that the exercise of its rights were done in a reasonable and proper manner, in the absence of any allegation or proof to the contrary, and that all the damages sustained by him from the actions of the coal company complained of were substantially covered by the recovery of the plaintiff against it, and that there could not be two recoveries for the same cause of action. Having presumably recovered damages in the condemnation suit, they necessarily covered all permanent and consequential damages resulting from the proper exercise by the defendant of its rights, and plaintiff cannot again recover in this action

for such permanent and consequential damage.  *Traction Co. v. Windom, supra;* 5 Enc. Dig. Va. & W. Va. Rep. 98.

That the plaintiff in his former action sought recovery from the coal company for all damages sustained is manifest, not only from the pleadings and proofs referred to, but from the nature and character of the instructions given in that action at the instance of the respective parties on the question of damages.  At the instance of the defendant the court told the jury that unless they believed that the action of the coal company was the controlling and dominant cause of the injuries complained of, they should find for the defendant. At the instance of the plaintiff, the jury was instructed that if they believed from the evidence that the coal and other offal from the defendant's mines deposited in the old creek bed were the nearest, most immediate and direct cause of the injury to plaintiff's land, then the said acts of the defendant were the primary and proximate cause of the overflow, and that the defendant corporation would be liable in such damages as the plaintiff may have sustained by reason of said negligent acts.  There was there no attempt to apportion the damages between the two alleged tortfeasors; and to have found for the plaintiff, as the jury did, under these instructions, they must have believed that the alleged negligence of the defendant was the nearest and proximate cause of the injuries complained of, and that it alone was liable for all the damages incurred.  The defendant here was not a party to the former suit, and the admissions may not have the effect of estoppel under the principles of *res adjudicata* but amount to judicial admissions by the plaintiff herein binding him as such.  It is said by Judge BRANNON in *Wilson v. Phœnix Powder Mfg. Co.,* 40 W. Va. 413, that "an admission may be open to explanation or rebuttal", but in this case there was no attempt to explain or deny the effect of those admissions, but on the contrary the evidence of the plaintiff in this case confirmed the fact covered by those admissions.  *Hunter v. Jones,* 6 Rand. 541; *Tabb v. Campbell,* 17 Grat. 160; 3 Jones Com. on Evidence (2nd Ed.) Sec. 998, cases cited and notes.

Further, on the right of the defendant to the peremptory instruction, the case presented by the declaration was not established by the proof, not even by the evidence of the plaintiff himself. The theory of the declaration was that the defendant by the construction of its railroad dammed up the water from Long Branch and other streams and caused it to flow back over the plaintiff's lands. By his evidence and the instructions offered, the theory of the plaintiff was that by reason of the alleged diversion of Paint Creek and other streams not enough water was permitted to flow through the regular channels to carry off the plaintiff's land the refuse deposited by the coal company—the one being the theory that there was too much water thrown on plaintiff's land, the other that too much was diverted therefrom. It is hardly conceivable that defendant in building its railroad was bound to anticipate that eight years afterwards the coal company would deposit in or along Long Branch the refuse from its mines which resulted in the damages, which have already been recovered by the plaintiff against it in said former action. As to the case presented by the second count, there was not a particle of evidence to sustain it. It is not shown or pretended that the size of the culvert referred to had anything to do with backing up the water on the plaintiff's land. Generally it may be affirmed that where the declaration based on negligence states a particular act or acts as a cause of the damage complained of, no evidence of other acts causing it may be given. *Snyder* v. *Wheeling Electrical Co.,* 43 W. Va. 661; *N. & W. Ry. Co.* v. *Warden,* 117 Va. 801; *Richmond R. R. Co.* v. *West,* 100 Va. 184.

Bearing on the question whether the construction by the defendant of its railroad retarded the flow of the water in the natural streams, and thereby caused the damages complained of, the evidence shows that the plaintiff's land through which the railroad was built and in that vicinity was low land, swampy in some places, dangerous to cattle grazing thereon, that the old channel of Paint Creek through this land was about a mile long, and that the fall of the water was only about one foot in a mile, or one-fourth of an inch in a hundred feet; so that the original flow of the water was necessarily

very sluggish and would not be sufficient to carry away such character of refuse as was deposited by the coal company. These being the facts, we think the defendant was entitled to instructions Nos. 9 and 19, refused by the court; and that the facts in evidence would have justified the defendant's peremptory instruction to find for him, and the refusal of the plaintiff's instructions Nos. 2, 3, 4 and 5 which were objected to.

We see no substantial objection to the plaintiff's instruction No. 6, given. It is well settled that a party is not entitled to instructions based on a theory not presented by the pleadings, nor to instructions which do not cover the whole case presented thereby. *Wilhelm* v. *Parkersburg etc. R. R. Co.*, 74 W. Va. 678; *Penix* v. *Grafton*, 86 W. Va. 278; *Wilson* v. *Caldwell*, 98 W. Va. 661.

The defendant assigns as error the action of the trial court in permitting the plaintiff to testify that the reason the deposits coming down Long Branch Creek remained in Paint Creek near the mouth of the former was because "there was no current to carry that litter out as fast as it come in—no current—the current being cut off there was no current to carry it out." The objection is that the witness was no better qualified than the jury to form an opinion on this question, and the facts being before the jury, his deductions therefrom could not aid them. "Where it does not appear that a witness is better qualified than the jurors to form an opinion in reference to facts already before the jury, and his deductions must be drawn from the same facts, his opinion is not admissible." *Cavender* v. *Cline Ice Cream Co.*, 101 W. Va. 3; *Overby* v. *C. & O. Ry. Co.*, 37 W. Va. 524; *Kunst* v. *City of Grafton*, 67 W. Va. 20; *Barna* v. *Gleason Coal Co.*, 83 W. Va. 216; *Cummins* v. *Railway Co.*, 99 W. Va. 511. In this case the evidence upon which the fact in issue must necessarily be determined was before the jury, and it does not appear that the witness was better qualified to form an opinion than they. During the course of the trial they were taken to the premises alleged to have been injured. They were as well qualified as plaintiff to say whether or not the current in the original channel of Paint Creek would have kept it cleared of refuse

of the character that came into it from Long Branch if the water diverted to the new channel by the defendant had been allowed to follow the old course past the mouth of Long Branch. We are of opinion that the admission of this testimony was improper.

For the foregoing reasons the judgment will be reversed, and the defendant awarded a new trial.

*Judgment reversed; new trial awarded.*