MOORE, KELLY & REDDISH, INC., *a corporation*

*v.*

SHANNONDALE, INC., *a corporation*

(No. 12719)

Submitted October 1, 1968.    Decided December 20, 1968.

*Rice, Hannis, Rice & Wagner, Lacy I. Rice, Jr., John M. Miller,* for appellant.

*Martin & Seibert, Clarence E. Martin, Jr.,* for appellee.

CALHOUN, JUDGE:

This case involves an action instituted in the Circuit Court of Jefferson County by Moore, Kelly & Reddish, Inc., a corporation, against Shannondale, Inc., a corporation, to recover the sum of $42,423.34 which was alleged to be the balance due the plaintiff on a written contract by which the plaintiff contracted to construct a dam on real estate owned by the defendant. The defendant landowner filed a coun-

terclaim in the action for the sum of $42,423.34 for damage alleged to have been caused to a swimming pool on the defendant's property by the plaintiff in the use of high explosives in blasting operations conducted by the plaintiff in connection with the construction of the dam.

Subsequently the parties agreed that the complaint alleged the correct amount of money due and unpaid under the terms of the written construction contract. Thereafter the trial proceeded solely on the claim asserted by the defendant landowner in its counterclaim. After a trial during which extensive testimony was taken by the respective parties, the jury returned a verdict in the sum of $33,810.13 in favor of the defendant landowner on the claim asserted by it in its counterclaim. On March 30, 1967, the trial court entered judgment against the plaintiff contractor pursuant to the verdict returned by the jury. From that judgment, the plaintiff has been granted the appeal to this Court.

For the sake of convenience and brevity, Moore, Kelly & Reddish, Inc., may be referred to hereafter in this opinion merely as Moore, as the plaintiff or as the contractor; and Shannondale, Inc., may be referred to merely as Shannondale, as the defendant or as the landowner.

In its petition for appeal to this court, Moore, has asserted thirty-six assignments of error. The primary assignment of error relates to the action of the trial court in submitting the case to the jury on the issue of absolute liability, rather than on an issue of negligence, for any damage which may have resulted proximately to the landowner's property from the action of the contractor in its use of high explosives in the blasting operations in connection with the performance of the contract. We will consider this question at the outset inasmuch as a decision of that question may be determinative of other assignments of error.

At a pretrial conference held on September 23, 1966, an order was entered setting forth various stipulations, including the following: "The question was raised about the requirement for proof of negligence and it was agreed that under the recent West Virginia cases that if it is shown that

the person in control of explosives detonated them that proof of negligence is unnecessary, but it must be shown that damage proximately resulted therefrom and the amount thereof." The order discloses additional stipulations of issues as follows:

"A. Whether the damages suffered by Shannondale to the pool and its appurtenances were proximately caused by the blasting of the contractor.

"B. If so, the amount of money by way of damages to which Shannondale is entitled from the contractor."

On November 28, 1966, counsel for the contractor moved the trial court to permit an amendment of the pre-trial order so as to require the defendant to prove negligence in the blasting operations and to eliminate from the order the words, "proof of negligence is unnecessary," on the ground that the language of the order in this respect was contrary to the law of this state "under the peculiar facts of this case." This motion was made in open court on November 28, 1966, the day on which the jury was empaneled for trial of the case, and more than two months after the pre-trial order was entered. The motion for leave to amend was overruled, apparently because the trial court was of the opinion that, under the law of this state and under the terms of the construction contract, the case should be tried on the issue of absolute liability. Counsel for the defendant argued before this Court that the motion for leave to amend made at the commencement of the trial, if granted, would have resulted in grave injustice because he had prepared his client's case and summoned witnesses for trial on the basis of an issue of absolute liability, and not on the basis of negligence.

Rule 16 (6) of the West Virginia Rules of Civil Procedure provides that a pretrial order "controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." See also comments made in relation to R.C.P. 16, in *Lugar & Silverstein*, W. Va. Rules, particularly at pages 149 to 151 inclusive. For reasons to be stated

hereafter in this opinion, we deem it unnecessary to decide whether the trial court abused its discretion or otherwise erred in refusing to grant the motion for leave to amend the pretrial order.

In ruling upon the plaintiff's motion to set aside the verdict and judgment and to grant a new trial, the trial court filed a written opinion which was made a part of the record. In such circumstances, we are permitted to consider the written opinion to determine the reasons for the trial court's rulings and judgment. *Lilly* v. *Taylor,* 151 W. Va. 730, 734, 155 S. E. 2d 579, 583; *Sargent* v. *Malcomb,* 150 W. Va. 393, 394, 146 S. E. 2d 561, 563.

In ruling on the contention that the case should have been tried on an issue of negligence, the trial court stated in its opinion that such contention was not in accord with the law of this state and also that such contention was at variance with provisions of the written construction contract. Portions of the written contract which are alleged to be material on the issue of liability are as follows:

"CONTRACTOR'S LIABILITY: The status of the Contractor in the work to be performed by him under this Contract is that of an independent Contractor and as such he shall properly safeguard against any and all injury or damage to the public, to public and private property, materials and things; and as such, he alone shall be responsible for any and all damage, loss or injury to persons or property that may arise, or be incurred, in or during the conduct or progress of said work without regard to whether or not the Contractor, his Subcontractors, agents, or employees have been negligent; * * *.

\* \* \*

"The Contractor shall take all necessary precaution to prevent damage to all overhead and underground structures and to protect and preserve property within or adjacent to the Site and shall be responsible for damage thereto. * * *.

"* * * The Contractor shall make good any damage or injury to public or private property whether within or outside of the areas covered by

the Project and shall promptly make restitution for, or proceed to repair or otherwise restore such damage or injury to property as may be deemed necessary by the Engineer. * * *.

* * *

"BLASTING. * * * Blasting may be done only to the depth, amount, and extent approved by the Engineer, with explosives of such quantity and power, and fired in such sequence by use of millisecond delay system of blasting and in such locations as will neither crack nor damage the rock outside the prescribed limits of the excavation nor damage other portions of the work. The Contractor shall submit his plan of blasting operations for approval of the Engineer prior to the execution of any blasting work. Approval of the method of blasting will not relieve the Contractor of his responsibility in blasting operations."

Doubtless the contracting parties, by a written contract based on proper consideration, had a legal right to contract for any reasonable basis of liability, not contrary to any public policy, for damage caused by the contractor to property of the landowner as a proximate result of the use of high explosives for blasting operations consequent upon the performance of the construction contract. 31 Am. Jur. 2d, Explosions and Explosives, Section 47, page 823. However, we do not deem it necessary to decide whether the contract itself imposed a burden of absolute liability upon the contractor in this case because of the fact that we are of the opinion that the trial court, in the circumstances of this case and under the law of this state, properly submitted the case to the jury on the issue of absolute liability. We do consider it material to note, however, that the contract does not provide for liability of the contractor only for negligence and it does not provide for an exemption of the contractor from the operation of the rule of absolute liability.

There is a conflict of authority on the question whether negligence must be proved in a case such as this as is disclosed from the following language quoted from 35 C.J.S., Explosives, Section 8 at pages 275-77, inclusive:

"There is a conflict of authority as to whether negligence must be present so as to impute liability on the person doing the blasting. Under what has been called the rule of absolute or strict liability, one lawfully engaged in blasting operations is, according to the weight of authority, liable without regard to the question of whether or not he has been negligent, where by his acts in casting rocks or other debris on adjoining or neighboring premises or highways he causes direct damage to property or causes direct injury to persons thereon. He is also, under the rule more generally adopted, liable for consequential injuries occasioned by concussion or vibration to property or for consequential injuries occasioned by concussion or vibration to persons, without the actual casting of material; nor is the rule restricted in application to instances where the blasting is a nuisance per se or where the property is contiguous or adjoining."

This Court is committed to the rule of absolute liability, whether the damage to the complaining party was caused by vibrations or by casting rocks or other debris on the complaining party's property. *Whitney v. Ralph Myers Contracting Corporation,* 146 W. Va. 130, 118 S. E. 2d 622; *Perdue v. S. J. Groves and Sons Company,* 152 W. Va. 222, 161 S. E. 2d 250. To the same effect, see also the following recent cases adhering to the rule of absolute liability in which, as in the *Whitney* case, numerous authorities are cited and considered: *The Enos Coal Mining Company v. Schuchart,* 243 Ind. 692, 188 N. E. 2d 406; *Guilford Realty and Insurance Company v. Blythe Brothers Company,* 260 S. C. 69, 131 S. E. 2d 900; *Wallace v. A. H. Guion & Company,* 237 N. C. 349, 117 S. E. 2d 359.

Counsel for the contractor recognize that this Court is definitely committed to the rule of absolute liability for damage proximately caused by the use of high explosives in blasting operations, but contend that there should be an exception to the general rule where, as in this case, the contractor comes on the property and conducts blasting operations with the consent of the complaining landowner, referring, in that connection, to certain cases cited, in a discussion of the general subject, in Annot., 20 A.L.R. 2d 1372,

at page 1408. The same subject is treated in 31 Am. Jur. 2d, Explosions and Explosives, Section 47, page 822. We have carefully considered the decisions of appellate courts referred to and cited in that connection. We are of the opinion, nevertheless, that the facts and circumstances of this case, including the terms of the construction contract, furnish no tenable basis for making an exception to the general rule of absolute liability.

The plaintiff in this case, in conducting the blasting operations, was not the servant or employee of the landowner, pursuing the landowner's directions in relation to the manner of conducting the blasting operations; but rather the plaintiff was an independent contractor, the methods and manner of the blasting being largely left to the contractor's judgment and discretion, considering the terrain, the soil and earth conditions, and the severity of concussion reasonably to have been expected in relation to the proximity of the swimming pool to the places where the blasting operations were conducted.

We believe *Whitney* v. *Ralph Myers Contracting Corporation*, 146 W. Va. 130, 118 S. E. 2d 622, tends to refute the contention that there should be an exception to the rule of absolute liability in the present case. In the *Whitney* case the plaintiff landowners were the owners of a dwelling, subsequently damaged by blasting, which was situated on property acquired by the state road commission for the purpose of constructing thereon a public highway. After the right-of-way was acquired, the dwelling was moved to other real estate belonging to the plaintiffs and placed at a location approximately eighteen hundred feet from the nearest point of blasting operations conducted by the contractor in constructing the highway. We believe *Jones* v. *Oman*, 28 Tenn. App. 1, 184 S. W. 2d 568 and *Fontenot* v. *Magnolia Petroleum Company*, 227 La. 866, 80 So. 2d 845, sustain the proposition that one may be held to be absolutely liable for damage proximately caused to property of another notwithstanding the fact that the one conducting the blasting operations entered on the land in question with the consent of the complaining property owner. We

are of the opinion, therefore, that the assignments of error designated as (1), (2), (25), (27), (28), and (29) are without merit because each relates to the action of the trial court in submitting the case to the jury on an issue of absolute liability rather than on an issue of negligence.

Shannondale owns approximately 3,500 acres of land in Jefferson County. It was described by its Executive Vice-President, C. A. Johnson, as a real estate development and community club enterprise, the primary object of which is to sell lots for home sites. Apparently homes constructed in connection with the business enterprise are rather costly. The swimming pool, a bathhouse and a clubhouse are maintained for use by owners of homes and their guests for recreational purposes, and to make the property more desirable and more saleable. Shannondale's purpose in having the dam constructed was to create a lake in order to enhance the beauty of the property, to make the surrounding property more saleable and to provide additional recreational facilities, including boating, swimming and fishing. The initial contract price for construction of the dam and appurtenances was in excess of $500,000. Additional improvements added by Shannondale made an aggregate cost in excess of one million dollars.

On joint motion of counsel for the respective parties, the jury took a view of the premises before the taking of testimony was commenced. The trial judge and at least some of counsel were present when the view was taken. Upon the return to the courtroom, counsel for the contractor made a motion for a mistrial on the ground that, while the view was being taken, C. A. Johnson made certain remarks in the presence and within the hearing of the jury, which remarks were substantially as follows: "That is the wall that fell down. Here is the crack in the side of the pool. It will match up with cracks in the pool that we will show in photographs in the Courtroom."

In ruling upon the motion for a mistrial, the jury not being present in open court, the trial judge stated to counsel: "* * * You will recall at the time the remarks were

made, I instructed the jury that the evidence would be heard in Court, and they would disregard any remarks made on the view, and the only purpose of the view was to show physical facts." After the jury was returned to the courtroom, the trial judge directed instructions to the jury as follows: "Gentlemen, the purpose of a view is to familiarize the jury with the surrounding facts—physical facts and circumstances, and ordinarily no evidence is taken on a view. As you will recall, no witnesses were sworn, and the attorneys didn't question them. If there were any remarks made by any parties on the view, other than just pointing out the specific locations—such as, that is the dam, that is the spillway, that is the club, that is the retaining wall. Any other remarks you will disregard that they may have made out there, as you will get your evidence that goes with your view from exhibits and from the sworn testimony that comes from the stand."

If there was any error in connection with remarks made at the view, it was cured by the instructions and admonitions directed to the jury by the trial judge. The jury, upon the view, was authorized and expected to observe all pertinent physical facts apparent on the premises and to consider such facts as evidence along with all other evidence introduced at the trial. *Butler* v. *Smith's Transfer Corporation*, 147 W. Va. 402, 414, 128 S. E. 2d 32, 40; *State Road Commission of West Virginia* v. *Milam*, 146 W. Va. 368, pt. 1 syl., 120 S. E. 2d 254. While testifying as a witness before the jury in open court, C. A. Johnson made substantially the same statements as the statements he is alleged to have made in the presence of the jury during the course of the view. Whether a motion for a mistrial should be sustained or overruled is a matter which rests within the trial court's discretion, and the action of the trial court in ruling on such a motion will not be cause for reversal on appeal unless it clearly appears that such exercise of discretion has been abused. *Thomas* v. *Wingold*, 206 Va. 967, 975, 147 S. E. 2d 116, 122; *Jones* v. *Ambrose*, 128 W. Va. 715, pt. 1 syl., 38 S. E. 2d 263. We are of the opinion

that the trial court did not err in denying the motion for a mistrial.

After both parties had rested, the plaintiff made a motion for a directed verdict asserting, among other grounds, that the landowner had failed to prove the necessity and reasonableness of the amount alleged to have been expended in repairing and restoring the swimming pool. The court thereupon granted Shannondale permission to reopen the case and to permit further testimony concerning the reasonableness and necessity of the costs incurred in the repair and restoration of the swimming pool.

Whether a plaintiff will be allowed to introduce further evidence after the taking of testimony has been concluded is ordinarily within the discretion of the trial court and the exercise of such discretion will rarely be ground for reversal. *Payne* v. *Kinder*, 147 W. Va. 352, 362, 127 S. E. 2d 726, 734; *Edmiston* v. *Wilson*, 146 W. Va. 511, pt. 10 syl., 120 S. E. 2d 491; *Janssen* v. *Carolina Lumber Company*, 137 W. Va. 561, pt. 1 syl., 73 S. E. 2d 12; *Weaver* v. *Wheeling Traction Company*, 91 W. Va. 528, pt. 4 syl., 114 S. E. 131; 88 C.J.S., Trial, Section 106, page 221. We are of the opinion, therefore, that this assignment of error is without merit.

By further assignment of error, it is urged that the trial court erred in refusing to permit Joseph Stike, a witness for the contractor, to testify in rebuttal whether he saw or did not see any steel rods in the foundation wall after it fell as a result of the blasting operations. It is difficult to determine from the record the precise basis of this assignment of error. Stike was recalled for further direct testimony. Counsel for the contractor asked Stike whether he saw any steel rods in the wall after it had fallen down. The witness replied that he did not. At that point, an objection was made by counsel for the landowner on the ground that "This has been gone into once." The court sustained the objection. Nevertheless, the answer remains in the record and no motion was made to the court to strike the answer or to direct the jury to disregard it. Under the principles stated in the authorities cited immediately above,

in connection with permission granted to the landowner to reopen the case and to submit additional testimony, we are of the opinion that the trial court did not abuse its discretion or otherwise commit reversible error in relation to the testimony of Stike.

While high explosives were used repeatedly by the contractor over an extended period of time in connection with the construction, the contention of the landowner is that the damage to the swimming pool was caused primarily, if not wholly, by blasting performed on October 12, 1964, and that a retaining wall used in connection with the pool was demolished, primarily at least, as a consequence of a blast on January 1, 1965.

Dr. Raymond W. Murry owns one of the homes on the Shannondale property which, according to his testimony, is farther from the site of the blasting than was the swimming pool. He testified that he and his wife were at this home on October 12, 1964. He testified at considerable length concerning the severity of vibrations and concussion caused by a blast made in the area of the damsite by the contractor on that day. Portions of his testimony are as follows:

> "* * * and sometime shortly before noon while my wife was engaged in cleaning up the kitchen area and I in the living room and the dog lying on the couch, there was a sudden and rather violent explosive noise that rocked the house rather dramatically, scared the daylights out of the dog so that she jumped clear across the room right on my back, and my wife jumped up and wondered what in the world happened. The walls shook, the foundation shook a bit, and it was very evidently an explosion * * *.

> * * *

> "Well, as I mentioned just a minute ago, the walls shook rather forcibly, and three pictures that we had hanging on the area of the outer walls were shaken off and fell; a pipe rack that I have hanging on one of the outer walls with about twelve pipes on it was thrown in disarray, and four of the pipes

were thrown half way across the room on the floor, and the windows, of course, shook, * * *."

Dr. Murry testified that, following the occurrences enumerated in his testimony referred to above, he went outside his home and observed "the dust cloud in the atmosphere". He testified further as follows:

"Well, later as I came back and observed more closely, there was a crack in the concrete block formation in the rear of the house that forms the outer wall of what we use as the laundry room and as a shop * * *. Then later I found that the pump had been knocked out, and the water pressure was nil, so that I had no water pressure whatever. There were cracks in the ground adjacent to the house, and a tree in back of my property —not on my property, but in the back of my property, * * * —had fallen over into the crotch of an adjacent tree and was leaning at about a 45 degree angle."

Dr. Murry testified that he was at his home on January 1, 1965, and that he recalled the blast which occurred that day. He described this latter blast as "not quite as dramatic or as effective as far as the sound is concerned at least, as the one previously, but it rocked and rolled the property a bit, and while I did not suffer the loss of water pressure, it became somewhat dirty for the matter of a day or so."

Dr. Murry testified that, following the blast on October 12, 1964, the level of the water in the swimming pool dropped at a rate of approximately two or three inches during a period of twelve hours; that the "retaining wall" and "the concrete" were cracked; and that following the blast on January 1, 1965, the retaining wall "was cracked, and subsequently a considerable portion of it fell in."

C. A. Johnson, executive vice-president of Shannondale, testified that on October 13, 1964, the day following the date of the first blast previously referred to, he was at the swimming pool at approximately 9:00 a.m.; that he then observed that the level of the water in the pool had dropped "in the neighborhood of three inches"; and that he could

not see where the water was going out of the pool, but he could see where it was eventually "ending up" because there was a wet place in the bank near the pool. He testified that thereupon he went to the construction site to get Henry See, construction foreman for the contractor. The two men then went to the pool to observe the extent to which the water level had dropped in the pool. Johnson testified that, at his request, See came back to the pool the next day and that the water level had dropped approximately three or four inches overnight.

Water was customarily kept in the pool throughout the winter months. Johnson testified that on the occasion of See's second visit to the pool, Johnson told See that if he desired that anybody else look at the pool, it should be done promptly because it would be necessary to drain the pool immediately, and that thereupon See told Johnson to "go ahead and drain the pool." The pool was thereafter drained. Johnson testified that after the pool was drained "we had looked at the cracks which were then of course visible." The cracks in the pool which were visible after it was drained were described in detail by Johnson.

Mr. Johnson testified that he was in Florida on January 1, 1965, the date of the second blast previously referred to, and that, upon his return, about January 4 or 5, he observed that the retaining wall had collapsed. Photographs were introduced for the purpose of showing the condition of the pool and of the retaining wall prior to October 12, 1964, and their condition after January 1, 1965.

Alfred Lyons, manager of Shannondale, gave testimony substantially the same as that of Dr. Murry and C. A. Johnson concerning the blast of October 12, 1964, and damage to the pool discernible shortly thereafter; and also concerning the blast of January 1, 1965. He testified that he went to the pool on January 2, 1965, and observed that the retaining wall had been demolished.

While testimony was introduced in behalf of the contractor, including the testimony of one or more expert witnesses, for the purpose of proving that it was unlikely that

the blasts could have been the cause of the damage to the pool and to the retaining wall, we are of the opinion that, on the question of cause and effect, the case was one of fact proper for submission to the jury for determination. Necessarily cases of this character, as a general rule, must be proved largely by circumstantial evidence. The circumstances proved in this case are quite persuasive on the issue of cause and effect.

In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned must be considered, and those facts which the jury might properly have found under the evidence must be assumed as true. *Morgan* v. *Price*, 151 W. Va. 158, 171-72, 150 S. E. 2d 897, 905; *Laxton* v. *National Grange Mutual Insurance Company*, 150 W. Va. 598, 604, 148 S. E. 2d 725, 729; *Sargent* v. *Malcomb*, 150 W. Va. 393, 396, 146 S. E. 2d 561, 564; *Poe* v. *Pittman*, 150 W. Va. 179, pt. 5 syl., 144 S. E. 2d 671. It is also well settled that, upon appeal of a case to this Court, a party who has a jury verdict in his favor which has been approved by the trial court is in a favorable position and such a verdict will not be set aside by this Court on appeal on the ground that it is contrary to the evidence unless, in that respect, it is clearly wrong or without evidence to support it. *Morgan* v. *Price*, 151 W. Va. 158, 171-72, 150 S. E. 2d 897, 905. These general principles apply in the present case both as to the proximate cause of damage to the pool and retaining wall and as to the amount of damages awarded by the jury.

Error is assigned to the action of the court in permitting C. A. Johnson to testify, or, as stated by counsel for the landowner, to refresh his recollection, by reference to an itemized statement of the cost of repairing or replacing the pool and retaining wall. Objection was made to testimony of this character on the ground that vouchers and other records of Shannondale constituted the best evidence in relation to such matters. When one such objection was made, the court stated: "You can fix up your subpoena duces tecum. Gentlemen, while we are waiting on what books

are available, will you proceed with other matters?" C. A. Johnson testified that he then had in his possession "copies of the checks", but he was not cross-examined in relation to them.

It is reasonably apparent that in the main, at least, Johnson, as executive vice-president of Shannondale, had personal knowledge of the several items of the cost of repair, and that he was using the paper he held merely to refresh his recollection. In his testimony he stated from time to time that "I paid" the various items of cost. We are of the opinion that the witness was properly permitted to use this memorandum which he had prepared in order to refresh his recollection of facts which were matters of his personal knowledge when the payments thus recorded were made. *State v. Adkins,* 106 W. Va. 658, pt. 4 syl., 146 S. E. 732; *Browning v. Hoffman,* 90 W. Va. 568, pt. 18 syl., 111 S. E. 492; *Bank of Greenville v. S. T. Lowry and Company,* 81 W. Va. 578, pt. 3 syl., 94 S. E. 985; *Hubbard v. Equitable Life Assurance Society,* 81 W. Va. 663, pt. 11 syl., 95 S. E. 811; *State v. Legg,* 59 W. Va. 315, pt. 2 syl., 53 S. E. 545; The Law of Evidence (Virginia and West Virginia), Sections 27 and 28, pages 51 and 52. "The use of a memorandum or writing by a witness during his examination to revive or refresh his recollection rests largely in the discretion of the trial court." 98 C.J.S., Witnesses, Section 358, page 83.

Much of this testimony and the objections thereto related to alleged loss of profit in the operation of the business, including operation of a snack bar at the clubhouse and charges for permission to use the swimming pool. Books or records relating to these items were produced in court and counsel for the contractor was given permission to inspect them. At that point, counsel for Shannondale announced that, in the interest of saving time, the claim for loss of profits was withdrawn and abandoned and, upon motion of counsel for the contractor, the court announced to the jury that such items of Shannondale's claim had been withdrawn or abandoned.

In ruling on this assignment of error, the trial court, in its written opinion, stated:

> "The Court would think these papers were available to the contractor if he desired to have them brought into evidence by subpoena duces tecum and in fact the record will show that the Court even offered to recess the trial and send Johnson to get the papers if the attorneys for the contractor desired them on the theory that they may have been helpful to the contractor by way of assisting in their cross-examination or perhaps used in the evidence in contradiction of Johnson's testimony. This action by the Court was as much as the Court could offer."

There is no showing from the record that counsel for the contractor undertook in any way to act upon the permission thus granted. The contractor did not undertake to prove that the cost of repair and replacement disclosed by Johnson's testimony was excessive, unnecessary or otherwise improper. We are of the opinion that the trial court committed no reversible error in this respect.

By way of further assignment of error, it is asserted in behalf of the contractor that Shannondale failed to sustain the burden of proving the necessity and reasonableness of the cost of restoring the pool and retaining wall, and particularly that C. A. Johnson was not qualified as a witness to testify as to such matters. It is undisputed that the pool and retaining wall were severely damaged, perhaps to such an extent that it was impossible to repair them but, on the contrary, that it was necessary to rebuild them completely. These facts are made obvious by testimony of witnesses and by photographs of the pool and retaining wall which were taken before they were damaged, and other photographs of the pool and retaining wall in their damaged condition. These photographs have been made exhibits and part of the record. That the pool and wall had been severely damaged must have been clearly obvious to the jury upon the view of the premises. Under this assignment of error, therefore, we need consider only whether C. A. Johnson was competent as a witness to testify concerning the reasonableness of the cost of restoring the pool and the retaining wall.

It is true that C. A. Johnson is not an engineer and that perhaps he is not an expert in the field of the cost of construction such as that involved in this case. However, a witness may express an opinion if, by reason of his knowledge and past experience, he has more knowledge concerning the subject of the opinion than the average juror is ordinarily expected to have. "Opinion evidence dealing with value and damages to land is admissible if the witness has some peculiar qualifications or more knowledge than jurors are ordinarily supposed to have." *Brown* v. *Crozer Coal and Land Company,* 144 W. Va. 296, pt. 9 syl., 107 S. E. 2d 777. The general rule is that the opinion of a witness who is not an expert may be given in evidence if he has some peculiar knowledge or more knowledge concerning the subject of the opinion than jurors are ordinarily expected to have. *Overton* v. *Fields,* 145 W. Va. 797, pt. 4 syl., 117 S. E. 2d 598; *Toppins* v. *Oshel,* 141 W. Va. 152, pt. 8 syl., 89 S. E. 2d 359; *Stenger* v. *Hope Natural Gas Company,* 139 W. Va. 549, pt. 7 syl., 80 S. E. 2d 889; *Lively* v. *Virginian Railway Company,* 104 W. Va. 335, pt. 4 syl., 140 S. E. 51; *Cochran* v. *Craig,* 88 W. Va. 281, pt. 8 syl., 106 S. E. 633. Whether a witness is qualified to express an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused. *Overton* v. *Fields,* 145 W. Va. 797, pt. 5 syl., 117 S. E. 2d 598; *Lewis* v. *Mosorjak,* 143 W. Va. 648, pt. 7 syl., 104 S. E. 2d 294; *Toppins* v. *Oshel,* 141 W. Va. 152, pt. 9 syl., 89 S. E. 2d 359; 32 C.J.S., Evidence, Section 449, page 85 and Section 458b, page 106.

C. A. Johnson testified that he designed and supervised the construction of the bathhouse; that he supervised most of the construction of the clubhouse; that, for two years, he was chairman of the building committee of Shannondale; that he repaired the entire filtering system of the swimming pool; that he had been able to estimate the cost of construction of houses previously erected at Shannondale; that he signed the checks in payment of work done by plumbers, carpenters and contractors in the construc-

tion of the clubhouse and bathhouse; that he was aware of the cost of labor and materials involved in such construction; that, as a part owner of a Silver Spring, Maryland, home improvement business, he and his two associates were engaged in construction business which included plumbing, carpenter work and the laying of tile; and that he built all the roads for Shannondale. He further testified that, before he undertook the reconstruction of the pool and retaining wall, he contacted three firms and that the contractor which performed the construction submitted "the lowest price I had at that time." He gave some additional testimony concerning his experience in construction work.

No testimony was offered in behalf of the contractor on the question of the reasonableness of the cost of the construction. All testimony on this question was introduced in behalf of Shannondale. It appears from the record that, throughout the trial, counsel for the contractor relied basically upon a contention that it could be held liable only upon proof of its negligence in the blasting operations and upon the contention that the blasting was not the proximate cause of the damage to the pool and retaining wall. We are of the opinion that the court did not err in permitting Johnson to express before the jury his belief that the cost of the construction claimed by Shannondale was reasonable in its amount. The weight of his testimony in this respect was, of course, a question for the jury.

We have carefully considered other assignments of error made in behalf of the appellant and are of the opinion that they constitute no basis for the reversal of the judgment of the trial court.

For reasons stated in this opinion, the judgment of the Circuit Court of Jefferson County is affirmed.

*Affirmed.*