JUANITA MORGAN *et al.*

*v.*

PAUL H. PRICE

(No. 12536)

Submitted September 27, 1966. Decided November 1, 1966.

*Ezra E. Hamstead, Richard E. Hamstead,* for appellant.

*Jesse M. Jaco,* for appellees.

CALHOUN, JUDGE:

This case, on appeal from the Circuit Court of Monongalia County, involves a civil action against Dr. Paul H. Price in which Juanita Morgan recovered judgment on a jury verdict for $15,000 for personal injuries sustained by her, and in which her husband, Cleo C. Morgan, recovered judgment on a jury verdict for $365.27 for medical bills incurred by him as a consequence of the personal injuries sustained by his wife. Dr. Price has been granted the appeal to this Court. The parties will be referred to in this opinion as the plaintiffs and the defendant.

The personal injuries were sustained by Juanita Morgan when she fell on August 25, 1963, as a result of an alleged defect in a board on a boat dock owned and maintained by the defendant on the Monongahela River at Uffington, Monongalia County, West Virginia.

The defendant, Dr. Paul H. Price, is the sole owner and operator of a business enterprise known as the Uffington Boat Club. This consists primarily of the boat dock for pleasure boats, but nearby and in connection therewith the defendant owns and maintains a ramp sloping downward from the shore into the river which is used for the purpose of putting boats into and taking boats out of the river. The defendant makes a charge of one dollar for the privilege of launching a boat at this ramp. Near the boat dock, the defendant also owns and maintains a pump used for supplying gasoline to boats. Nearby on the shore, on the defendant's property, are picnic tables, a vending machine for dispensing soft drinks, and a vending machine for dispensing ice cream. In connection with these facilities, gasoline, oil, soft drinks and ice cream are available for sale by the defendant.

There was testimony before the jury which was adequate to justify a jury in finding that all people coming there on the river in boats were permitted

without restriction to purchase these items of merchandise which were available for sale by the defendant. While signs were maintained on the premises stating, in effect, that the premises constituted private property and that trespassers were not permitted to enter thereon, it is not certain that any of these signs were clearly visible from the river. The plaintiffs testified that on previous occasions they had purchased gasoline, soft drinks and ice cream at that place from the defendant. While the defendant testified that such items of merchandise were available for sale and purchase primarily for the benefit of his patrons who moored their boats at the dock, it appears clearly from the testimony that such items of merchandise were sold regularly, possibly as a courtesy, to all persons who came there in boats.

The main portion of the boat dock, as it appears from a photograph in the record as an exhibit in connection with the testimony, is long in relation to its width, extending lengthwise parallel to the shoreline. A walkway extends to it from the river bank. On the opposite or river side of the dock, there are wooden walkways extending outward toward the center of the river. Each of these walkways, which are referred to in the record as fingers, extends outward from the dock a distance approximately equal in length to the average length of the boats docked there. Between the two fingers in each instance, there is a space sufficient to accommodate two boats side by side in the water while such boats are moored to the main part of the dock.

In connection with the operation of the dock, the defendant charges boat owners for the right to dock and moor their boats in the spaces between fingers. The charge thus made by the defendant gives to the owner and other users of a boat the right to use the adjacent finger as a means of boarding or leaving the boat. The right to this use of the fingers is shared with the owner and other users of the boat which is

docked in the space on the opposite side of the same finger. While it is sometimes implied in the record that the defendant rents the fingers to boat owners, we believe it is more accurate to say that boat owners are charged for the right to keep their boats in the spaces between fingers, with the accompanying right in each boat owner and his guests to use the adjacent finger jointly with the owner and other users of the boat in the space on the opposite side of the same finger. This is made clear, we believe, from the testimony of the defendant and the testimony of Harry G. Lucas, who initially owned and operated this business enterprise jointly with the defendant.

The plaintiffs, at the time of the accident involved in this case, were the owners of a boat which they kept at a dock referred to in the testimony as Little Falls Boat Club and which is owned jointly by the plaintiffs and other persons. The plaintiffs' boat had been launched at the defendant's launching facility at the beginning of the 1963 boating season because there are no launching facilities at the Little Falls Boat Club. Dr. Price, the defendant, testified: ''As a matter of fact, practically all of the Little Falls Boat Dock people put their boats in there to get to their dock. They launch them over that ramp.''

On Sunday, August 25, 1963, Mrs. Morgan's brother from Kansas City, Missouri, was at Morgantown. He had brought to Morgantown his own boat which had been transported by him on a trailer hitched to his automobile. The plaintiffs, the brother from Kansas City and other persons planned to meet at the defendant's place of business at Uffington on that day. According to the testimony, it was a part of the plan that the members of the group would have a picnic, engage in skiing on the river, and incidentally purchase soft drinks and gasoline for the boats from the defendant. The brother put his boat in the river at the defendant's launching ramp. Later the plaintiffs ar-

rived in their boat and placed it in a space adjacent to one of the fingers.

Juanita Morgan, the plaintiff, alighted from the boat onto the adjacent finger and, according to her testimony, after she had proceeded a distance of seven or eight steps, a board on the finger broke and, as a consequence, all of her body below her bosom went through the opening made by the broken board. She sustained severe personal injuries. There is no serious contention that the verdict in her favor is excessive in amount.

The testimony was adequate to support a jury finding that the plaintiffs, in placing their boat temporarily in the vacant space adjacent to one of the fingers, were making a permissive use of that space in accordance with a practice which was quite general and a matter of common knowledge among boaters of that general area. The testimony establishes the fact that this was in accordance with a general practice among boaters who desired to purchase items of merchandise which were available for sale by the defendant. If a boat owner thus placed his boat temporarily in such a space, and if the boat owner who had paid for use of that space arrived and desired the space for his boat, the general custom was that the owner of the boat temporarily placed there would move his boat in order to make the space available to the boat owner who had paid the defendant for the right to use that space.

The gist of the plaintiffs' complaint is that Juanita Morgan, as a member of the boating public, was an invitee on the defendant's premises at the time and place she sustained her personal injuries; that the defendant owed to her as an invitee a duty to exercise ordinary care to maintain the premises in a reasonably safe condition for her use; that the defendant negligently failed to do so; and that as a consequence of such negligence Juanita Morgan sustained the personal

injuries which form the basis of this case. The defendant, by way of defense, asserted that the plaintiffs were trespassers at the time and place in question. In the first and second points of the syllabus in *Burdette v. Burdette,* 147 W. Va. 313, 127 S. E. 2d 249, the Court defined invitees and the duty owed to them as follows: "1. A person is an invitee when for purposes connected with the business conducted on the premises he enters or uses a place of business. 2. The owner or the occupant of premises owes to an invited person the duty to exercise ordinary care to keep and maintain the premises in a reasonably safe condition."

The jury, we believe, was properly and adequately instructed in relation to the definition of and the duty owed to a business invitee, and also in relation to the law pertaining to contributory negligence, latent defects, the burden of proof, proximate cause, implied invitation to use business premises, use of premises by a mere licensee, or by a trespasser and the duty owed by the owner of premises to a licensee and to a trespasser. The defendant complains of the action of the court in refusing to give certain instructions offered by him. We believe the instructions refused were adequately covered by instructions given and that the trial court committed no reversible error in this respect. This Court has often held that duplication of instructions is neither necessary nor desirable and that it is not error to refuse to give an instruction if the subject matter of it has been sufficiently covered by one or more other instructions given by the court. *Walker v. Monongahela Power Co.,* 147 W. Va. 825, pt. 7 syl., 131 S.E. 2d 736; *Butler v. Smith's Transfer Corp.,* 147 W. Va. 402, pt. 9 syl., 128 S. E. 2d 32; *Graham v. Wriston,* 146 W. Va. 484, pt. 11 syl., 120 S. E. 2d 713.

On an itemized doctor bill introduced in evidence in behalf of the plaintiffs, designated as "Plaintiffs' Exhibit #4", there appears a typewritten memor-

andum or notation as follows: "Maryland Casualty Co. Mr. S. L. Davis Chamber Comm. Bldg., Pittsburgh 19, Pa." It does not appear when, by whom or for what purpose that typewritten language was placed on the doctor's bill. It is not noticeably different in appearance from other typing appearing on the exhibit. The testimony discloses that the physician who rendered the bill in question for his treatment of Juanita Morgan for her personal injuries was ill and for that reason was unable to be present during the trial.

In behalf of the defendant it is asserted that the exhibit referred to was requested by the jury and taken to the jury room after it had retired to the jury room to commence its deliberations, and that the jury was thereby improperly advised that the defendant was covered by liability insurance. For various reasons we feel that this objection is not well taken. It does not appear that plaintiffs or their counsel purposely introduced this exhibit in evidence with knowledge that it contained on it the language in question. It does not appear that this was anything other than an oversight and inadvertence on the part of plaintiffs' counsel. The language in question conveys no more indication that the defendant was covered by insurance than that the reference was to insurance carried by the plaintiffs. Even if it be conceded that the language makes reference to insurance, it could have afforded to the jury no more than a basis for mere conjecture as to the type of insurance referred to, and as to whom it covered.

When "Plaintiffs' Exhibit #4" was identified by a witness and offered in evidence, counsel for the defendant merely stated: "Objection." Obviously this general objection was not sufficient to reach the question here involved because the exhibit in all other respects was proper to be introduced in evidence. *McKinney v. Providence Washington Insurance Co.*, 144 W. Va. 559, pt. 4 syl., 109 S. E. 2d 480; *DePue v. Steber*, 89 W. Va. 78, pt. 7 syl., 108 S. E. 590. This

assignment of error is not well taken for the additional reason that the record before the Court on this appeal does not disclose that the exhibit was taken to the jury room or that the notation appearing thereon ever came to the attention of the jury in any manner. We do not question the correctness or truth of counsel's assertion in this respect. We merely state that the truth of the assertion is not reflected in the record by a court order, by the court reporter's transcript or otherwise. An appellate court will not reverse the judgment of a trial court unless error affirmatively appears from the record. A plaintiff in error bears the burden of showing error in the judgment of which he complains. *Rollins v. Daraban,* 145 W. Va. 178, pts. 3 and 4 syl., 113 S. E. 2d 369; *Alexander v. Jennings,* 150 W. Va. 629, pt. 4 syl., 149 S. E. 2d 213.

It is further asserted in behalf of the defendant that, after the case had been given to the jury and after the jury had deliberated ''for many hours'', the trial court temporarily excused the jury from further deliberations in this case, used some of the same twelve jurors for the trial of two other jury cases, and thereafter reassembled the jurors in service in this case and sent them to the jury room to resume their deliberations, which ultimately resulted in the verdicts previously referred to in this opinion. This contention is, in the main, substantiated by orders of the trial court which are made a part of the record before the Court on this appeal.

An order of the trial court entered as a part of the proceedings of May 25, 1965, in the instant case discloses that on that day a jury was impaneled and sworn; that the taking of testimony was commenced; and that, the taking of testimony not having been completed, the case was continued to the following day. On the following day, Wednesday, May 26, 1965, as disclosed by the trial court order of that date, the taking of testimony was resumed and completed, and, after having heard the instructions of the court and

argument of counsel, "the jury was dismissed until Friday morning, May 28, 1965, at 9:30 A.M., until which time it is ordered that this case be, and it is, hereby continued." We note that this order adjourned the instant case from May 26, 1965, to May 28, 1965.

From a trial court order dated May 27, 1965, it appears that on that date a certain jury case was tried, resulting in a jury verdict for $1,000 in favor of the plaintiff in that case. Eight of the jurors in that case had the same names as eight jurors in the instant case. From another court order dated May 27, 1965, it appears that on that date, in still another case, a jury was impaneled and sworn, which order concludes as follows: "And having heard all the testimony in behalf of both parties, the Jury was dismissed until Friday, morning, May 28, 1965, at 9:30 A.M., until which time it is ordered that this case be, and it is, hereby continued." Three of the persons who served on that jury bear the same names as three of the jurors who served on the jury in the instant case. The record does not contain an order entered in that particular case on May 28, 1965, the day to which it was continued. An order, however, entered in the instant case on May 28, 1965, contains the following language: "And the Jury returned into Court in accordance with their adjournment on Wednesday, May 26, 1965, and retired to its chamber to consider of their verdict. After some time, they returned into Court and upon their oaths returned the following verdict: * * *."

Counsel for the plaintiff in this case make no denial of the assertion that deliberations of the jury in this case were suspended or interrupted over Thursday, May 27, 1965, and that a number of the members of the jury meantime sat as jurors in the two cases which were tried before deliberations by the jury in the instant case were resumed on Friday, May 28, 1965.

The Court strongly disapproves the action of the trial court in this respect. The evil we perceive in

the procedure is not the mere fact that further proceedings in the trial of the case were suspended from Wednesday, May 26, 1965, until the trial of the case was resumed at some time on Friday, May 28, 1965. It is not unusual for the trial of a case to be recessed, for instance, from Friday afternoon of one week until Monday forenoon of the following week. The usual procedure in a situation of this character is for the trial judge, by appropriate language, to admonish the members of the jury that, during the period of the recess, they must keep their minds free from extraneous matters which might improperly influence or divert the minds of the jurors in considering and deciding the case in which they are sitting. The danger and the possibility of prejudice we perceive in the action of the trial court is that, after the jury had heard all the evidence, the instructions of the court and argument of counsel and before the case was decided, a considerable number of the twelve jurors were required to have their minds diverted and encumbered by testimony, instructions of the court and argument of counsel in other cases.

While the action of the trial court is strongly disapproved, we are of the opinion that such action cannot furnish basis for reversal in this case because the record fails to disclose that there was, at any time during the trial, any objection made to the action of the court. The order of May 26, by which the jury was dismissed until May 28, discloses that all parties and all of counsel were present in person. The order of May 28, showing the return of the jury, their retirement to the jury room, the rendition of the verdicts, and the entry of judgments thereon, also discloses the presence in person of all parties and all of counsel in the case. No objection to the action of the court, before the case was concluded and the jury discharged, is reflected anywhere in the record. The record discloses no objection until some time after the trial, when the matter was made a ground of the motion to set

aside the verdicts and judgments and to grant the defendant a new trial. This objection came too late. When an objection is not timely made in the trial court, and when the matter involved is not jurisdictional in character, such objection cannot be considered by this Court on appeal of the case. *The State Road Commission v. Ferguson,* 148 W. Va. 742, pt. 1 syl., 137 S. E. 2d 206.

As a part of the plaintiffs' testimony in rebuttal, John R. Ross testified that he is editor of the Three Rivers Boating Guide for the Allegheny, Monongahela and Ohio Rivers and, over defense objection, he was permitted to introduce portions of the 1964 edition which indicated that the Uffington Boat Club had available gasoline, ice, fresh water, overnight dockage and rest rooms. It stated that a snack bar was planned. Ross testified that this information was supplied to him by Dr. Paul H. Price, the defendant, in a telephone conversation in November or December, 1963. Thereafter Dr. Price again took the witness stand. He admitted having had the telephone conversation and testified that the information contained in the publication was "partially incorrect." In relation to the telephone conversation, he testified: "I did not say there was any ice facilities there. There are no rest rooms. There is a 'privy' there and there is no fresh water there at the dock, so I couldn't have said that. As to planning a snack bar in 1964, I probably did tell him that, but of course that's never been done, and I don't know Mr. Ross but I did receive a telephone call from a man who said he represented a guide book —Three Rivers, as I remember, and I gave him the factual information as I had it at that time." The jury had before it the testimony of John R. Ross and Dr. Price. We do not perceive any reversible error in connection with this aspect of the case.

As an additional assignment of error, it is urged that the court committed reversible error in overruling a motion to direct a verdict for the defendant at the

conclusion of the plaintiffs' evidence in chief. We are of the opinion that the ruling of the court was proper, but, even if the trial court committed error in this respect, the defendant waived the error by proceeding to introduce evidence in his behalf. *Gilkerson v. Baltimore & O. R. Co.*, 129 W. Va. 649, pt. 5 syl., 41 S. E. 2d 188; *Ercole v. Daniel*, 105 W. Va. 118, pt. 1 syl., 141 S. E. 631; *Pennington v. Gillaspie*, 66 W. Va. 643, pt. 3 syl., 66 S. E. 1009.

It is further urged that the trial court erred in overruling the defendant's motion for a directed verdict at the conclusion of all the evidence and in refusing to sustain the motion to set aside the verdicts and judgments and to grant the defendant a new trial on the ground that the verdicts are contrary to the law and the evidence. The basic factual issues presented for jury determination were the questions whether Juanita Morgan, at the time and place she sustained her personal injuries, was an invitee on the defendant's premises, and whether the defendant was negligent in the performance of a duty he owed to her.

Cleo C. Morgan testified that, after his wife was taken to a hospital, he returned to defendant's premises and inspected the boards on the dock at and about the place where his wife sustained her injuries. He testified that the boards in that area of the dock, including the one which broke, appeared to be solid but that, on the underneath side, they were "deteriorated" and that the board which broke was "rotten." Anna Shuman, a witness for the plaintiffs, testified that she was present at the dock when Juanita Morgan fell. She testified that the surface of the board which broke "was just plain weathered and rotten." She testified further: "The board where she fell through was weathered and it was rotten from the underneath where the water would beat up against it." The testimony discloses that defective boards on the dock had been replaced previously from time to time and that the defendant kept "large quantities" of lumber and

also hammers, saws and nails in a garage near the dock for the purpose of replacing defective boards. The jury resolved the factual issues in favor of the plaintiffs. A determination of the factual issues involved the weight of the evidence, the credibility of witnesses, reasonable inferences to be drawn from evidence which was without substantial conflict and also, to some extent, conflicting testimony.

It has been said that where a party litigant comes to an appellate court fortified by the verdict of a jury, approved by the trial court, ''he occupies the strongest position known to the law.'' 1 M.J., Appeal and Error, Section 270, page 693. This Court has consistently recognized that an appellant in such circumstances occupies a favorable position but the situation of such an appellant has not been stated by this Court in superlative terms. General principles of law applicable to such a situation were recently stated by this Court in *Poe v. Pittman,* 150 W. Va. 179, 190, 144 S. E. 2d 671, 679, as follows:

> ''It is the peculiar and exclusive province of the jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses is conflicting. *Evans v. Farmer,* 148 W. Va. 142, pt. 1 syl., 133 S. E. 2d 710; *Graham v. Crist,* 146 W. Va. 156, pt. 2 syl., 118 S. E. 2d 640; *Overton v. Fields,* 145 W. Va. 797, pt. 2 syl., 117 S. E. 2d 598. A jury verdict based on conflicting testimony involving the credibility of witnesses and approved by the trial court, will not be set aside by this Court on the ground that it is contrary to the evidence unless in that respect it is clearly wrong or without sufficient evidence to support it. *Levine v. Headlee,* 148 W. Va. 323, pt. 1 syl., 134 S. E. 2d 892. In determining whether a jury verdict is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and all facts which the jury might properly have found in

support of its verdict must be assumed as true. *Levine v. Headlee et al.*, 148 W. Va. 323, 329, 134 S. E. 2d 892, 896; *Walker v. Monongahela Power Co. et al.*, 147 W. Va. 825, pt. 3 syl., 131 S. E. 2d 736.''

To the same effect see *State v. Carroll*, 150 W. Va. 765, 773, 149 S. E. 2d 309, 314. The rule has been recently stated conversely as follows: ''A jury verdict, approved by the trial court, which is against the clear weight and preponderance of the evidence will be set aside on appeal.'' *Laxton v. National Grange Mutual Insurance Co.*, 150 W. Va. 598, pt. 3 syl., 148 S. E. 2d 725. We believe the verdicts in this case, so far as they relate to the factual issues, are not clearly wrong and that they were properly approved by the trial court.

For reasons stated in this opinion, the judgments of the Circuit Court of Monongalia County are affirmed.

*Affirmed.*