## STATE OF WEST VIRGINIA
## IN THE SUPREME COURT OF APPEALS

**MATTHEW EDWARD DREHER,**
**Defendant Below, Petitioner**

**vs.) No. 12-0888 (Kanawha County No. 08-C-1771)**

**RICHARD R. ANDERSON,**
**Plaintiff Below, Respondent**

**and**

**JES, INC. d/b/a THE SOUND FACTORY,**
**Defendant/Third-Party Plaintiff Below,**
**Respondent**

**FILED**

**November 14, 2013**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

The Petitioner and defendant below, Matthew Dreher, by counsel Albert C. Dunn, Jr., appeals a June 19, 2012, order of the Circuit Court of Kanawha County denying his motion for a new trial. Respondent and defendant/third-party plaintiff below, JES, Inc. d/b/a The Sound Factory, by counsel Travis A. Griffith, filed a response. Respondent and plaintiff below, Richard Anderson, by counsel R. Chad Duffield, filed a summary response. Petitioner Dreher filed a reply. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case involves an automobile accident that occurred on July 19, 2008, involving Dreher, who was driving under the influence ("DUI"), and Respondent Richard Anderson, plaintiff below.[1] Anderson sustained serious injuries as a result of the accident. Dreher was allegedly drinking at the Sound Factory, a bar located on Kanawha Boulevard in Charleston, on the night the accident occurred. It is owned and operated by JES, Inc. JES was brought into the instant lawsuit by Anderson based on allegations that it was negligent in serving Dreher alcohol even though he was visibly intoxicated. The jury returned a verdict finding that Dreher's negligence proximately caused Anderson's injuries. Anderson was awarded one million dollars for compensatory and punitive

---

[1] The accident occurred at approximately 11:20 p.m. near the corner of East Washington and Elizabeth Streets in Charleston, when Dreher ran a red light.

1

damages against Dreher. The jury found no negligence on the part of JES, Inc. and attributed no fault to JES, Inc.

In this appeal, Dreher alleges that the circuit court erroneously prohibited him from using a prior inconsistent statement for the purposes of impeaching a key witness at trial, Conrad Carpenter, the doorman working at the Sound Factory on the night of the accident. Anderson had a prior statement of Mr. Carpenter taken by his investigator, Michael Kidd, via telephone on October 28, 2009, wherein Carpenter stated that he was aware of the accident that occurred on East Washington Street, and that "a guy named Anderson was hit by a guy named Dreher"; that a police officer talked to him about the accident and he told the officer that Dreher had been in the bar that night but had left about three to four hours earlier; and that he remembered Dreher because he was the only person in the bar who presented with an out of state identification on the night in question. The telephone conversation was later transcribed. The statement was inconsistent with his deposition and trial testimony, wherein Carpenter stated that Dreher was not drinking at the Sound Factory that night because he remembered refusing admittance to the only person who presented with an out of state identification, and Dreher had a South Carolina driver's license. Dreher alleges that if this evidence had been admitted, the jury could have been persuaded that he was indeed drinking at the Sound Factory that night, and thus, found Sound Factory liable for a portion of the verdict under joint and severable liability.

During discovery, both Dreher and JES requested witness statements, expert opinions, and the basis for the expert opinions in various interrogatory requests to Anderson. Anderson did not disclose the statement because he intended to only use the statement for impeachment purposes, claimed it was work product, and claimed that opposing counsel did not seek to compel the statement from him. The statement was disclosed by Anderson's counsel in its pretrial memorandum, wherein it was identified as a potential exhibit for impeachment purposes. However, Anderson's expert, Mark Willingham, testified about Mr. Carpenter's statement during his trial testimony.

During Anderson's case-in-chief, Mr. Willingham testified that he used Carpenter's statement to form his expert opinions. JES objected arguing that there is no attorney work product exception to documents once they have been reviewed by an expert. At that time, the court issued no ruling as to the admissibility of the statement because Anderson's counsel indicated he would "redirect him away from that."

Later, during JES's case-in-chief, Mr. Carpenter was called to offer testimony regarding his recollections of the evening of the accident while working as a doorman for JES. During direct testimony, Mr. Carpenter testified as follows:

> BY MR. GRIFFITH: Okay. Do remember if you were working the door at The Sound Factory on July 19, 2008?

2

A: I have to tell you, the only reason that I will say yes is because I remember an incident. I didn't remember the date, but that's the date that's set forth in my deposition, so I would have to say yes only because of that reason.

Q: You remember an incident?

A: I do.

Q: Are you speaking of the car accident that we're here with today?

A: The accident itself, no. I was at the door and I don't know what time and it was dark. Sgt. Mark Abbott come up to the door with the Charleston Police Department. He had asked me if anyone had been in the bar recently with an out-of-state ID. I told him the only guy that came to the bar that night, and I only knew this because it was very slow, I told him the only gentleman that came to the door that night with an out-of-state ID was loud. He appeared too intoxicated and a little mouthy so I denied him access. I don't believe I gave him a description because at the time it seemed insignificant. But I told him that the only person I seen with an out-of-state ID that night was denied access to the bar.

Q: So at the time - do you remember when about in the evening Sgt. Abbott from the Charleston Police Department spoke to you about this?

A: I'm sorry, I don't. It's been two years. I don't remember. I know it was dark. When he came to speak with me it was - you know, I don't even know if I can tell you it was dark. I don't know. It's been two years, a little bit over.

Q: Did he mention anything specific about the accident?

A: No. When I asked him why - I was curious - he didn't mention at first, but I asked him why he was asking. He said that there'd been an accident somewhere near Elizabeth Street. That was about the extent of it.

Q: But at the time he spoke to you the accident had already occurred?

A: Yes, sir.

Q: And at that point on July 19, 2008, you recall that you did not let anyone into The Sound Factory that had an out-of-state driver's license?

A: That's correct. There wasn't many people in there.

During Anderson's cross-examination of Carpenter, Anderson's counsel performed a brief lead up and moved into the recorded statement issue, which resulted in an objection and two separate lengthy debates outside of the presence of the jury. The following exchange occurred:

BY MR. CURNUTTE: Yes, Your Honor. You [Carpenter] indicated you had been a Charleston policeman at this time?

A: Yes, sir.

Q: And you're not a Charleston policeman now?

A: That's correct, sir.

Q: And you were a Montgomery policeman after that?

A: Yes, sir.

Q: You're not now?

A: That's correct, sir.

Q: Do you remember a statement that you gave to a gentleman? An investigator named Mike -

MR. GRIFFITH: Your Honor, I have an objection now. May we approach?

THE COURT: Yes.

(Bench conference on the record)

4

MR. GRIFFITH: Your Honor, this was brought -

THE COURT: Can you lower your voice and get closer to the microphone?

MR. GRIFFITH: Okay. Your Honor, this was brought up early on in the case. There was a discussion when Mr. - I believe his name is Williams - the expert they had, testified. And I brought it to the Court's attention that there were apparently statements.

THE COURT: Right.

MR. GRIFFITH: They'd hired an investigator to speak and it was recorded. Now I can actually show you, I pulled the discovery request in anticipation of this, where we had asked for not only any statements that were taken which they claim work product --

THE COURT: You need to lower your voice.

MR. GRIFFITH: Any statements they had which they claimed work product for, but then also we asked for files of their experts.

Their expert testified on the stand that he was given this statement and then it was never produced to us. That took away the work product.

I must remind the Court, I reminded Mr. Hayhurst and Mr. Curnutte after the deposition of Dr. Guberman on last Monday, I believe it was the 24th, that I'd never received these statements and if they'd get them to me I wouldn't make a stink at trial.

They never did. I've never seen them. They never produced them. It's not work product because they gave it to their experts and you gave a previous ruling that it could not be brought up in this case, and so I would like to uphold that ruling at this point.

MR. CURNUTTE: Your previous ruling was –

THE COURT: No, you need to lower your voice, too.

5

MR. CURNUTTE:  Oh, okay.  Your previous ruling was it cannot be used in our case-in-chief.

This is a statement used for impeachment purposes.  We can give it to opposing counsel when we use the statement.  And we are using the statement now strictly for impeachment purposes.

MR. GRIFFITH:  Your Honor, that was not work product when they gave it to their expert and they never gave it to us.  At least, they never gave it to me.

THE COURT:  Yeah, I think that's accurate.  Because your expert has testified that he reviewed it and that takes it out of the work product exception, does it not?

MR. CURNUTTE:  We are not asking that the statement be introduced into evidence or being used as evidence.  It is strictly being used for impeachment purposes.

. . .

THE COURT:  So you – have you ever given it to him to see?

MR. CURNETTE:  To him?

THE COURT:  Uh-huh.

MR. CURNETTE:  No.  Was going to.  When I ask him if he remembered the statement.  And it's not going to be evidence, Your Honor.  It's strictly for impeachment.

MR. GRIFFITH:  Your Honor, they took the statement.  Apparently it was a recorded telephone conversation.  Actually, it was taken by an investigator that they hired.

I think there's probably a foundation problem with it, too, since they've never given a copy to Mr. Conrad [sic] to review.

But I've had to bring it up to opposing counsel, this is I think the third time.

. . .

6

THE COURT: All right, so I think we're under Rule 613 of the Rules of Evidence concerning a prior statement.

It's my understanding that through discovery the defendants, JES, did request any statements be given to them. Any statements taken, I guess, by any witness, of any witness.

They've renewed that request but none has been forthcoming. There has been testimony in this court that at least one of the experts hired by the plaintiff had those statements that were apparently taken by an investigator hired by the plaintiff law firm.

Mr. Griffith is objecting to any use of those statements for any impeachment purposes of the witness who is presently on the witness stand, as I understand that.

Anything else you want to add to your objection, Mr. Griffith?

MR. GRIFFITH: Your Honor, all I'll add is what I reiterated, what I stated at the bench. Prior statements of a witness, they can examine a witness, but if you look at the last sentence of Section A, "But on request, the same shall be shown or disclosed to opposing counsel."

All parties to the defense of this case have asked in discovery early on in the case whether the attorney, its agents or representatives from them are in possession or custody of any statement made or allegedly made by the defendant or any officer, agent, employee, representative of the defendant.

If so, they got to give the date of the statement, the name, whether the statement was taken and the substance of each statement.

They objected to that interrogatory to the extent it seeks disclosure of attorney work product. As Mr. Dunn aptly pointed out when the first expert witness was on the stand, the expert witness was talking about these prior statements which were never disclosed to us, and by giving them to the expert witness, they are no longer attorney work product and should've been disclosed to us.

Actually, I think they should've been disclosed to us under the rule anyway, but this goes around the attorney work product portion.

Your Honor, also we asked details into the files of expert witnesses in written discovery. The summary, grounds, and the complete description all materials submitted to the

7

expert for review, and they objected that they would give that in accordance with the Court's scheduling order.

I will reiterate that on October 24, 2011 when we took the videotaped deposition of Dr. Guberman at Farmer Cline and Campbell, we consulted, all current trial counsel consulted, as the Court ordered, with regard to exhibits that would be offered in trial to try to hamper down a lengthy exhibit list and witnesses that would be offered at trial.

At that meeting I told Mr. Curnutte and Mr. Hayhurst that I had never received those statements and I would like to see them prior to trial. They never supplemented with those.

Then yesterday when we brought it up with regard to the expert witness, they never gave them again, and now they're trying to use them to impeach a witness at trial when they've never provided them to us, even though I believe they're under a duty to seasonably supplement their discovery, and under the rule, to provide us with the prior statements of any witnesses on the request that we - they disclose the same.

. . .

THE COURT: What is your all's reasoning for not exchanging this statement in discovery?

MR. CURNUTTE: Because it is not evidence. There is not going to be presented in our case-in-chief. It is not offered as evidence. It's strictly impeachment.

THE COURT: Well, I don't think that's what the request was. It wasn't a request for evidence. Frankly, the rules of discovery, what's discoverable and what's evidence, are not even close in my book.

It's not whether you intend to use it. That wasn't the issue. You asked for any statement taken by any, of any witness.

MR. GRIFFITH: Yes, Your Honor.

THE COURT: In your possession. You said it was work product but then you gave it to your expert.

MR. CURNUTTE: That was inadvertent, Your Honor. It is work product. It was inadvertently given to the expert. I don't know how he got it.

MR. GRIFFITH: It was given to the expert, Judge. Inadvertent or not, it was given to the expert. It takes it out of the work product. And I believe, I mean, they named these experts long ago. I'm sure it was given to the expert a long time ago.

THE COURT: Yeah. I'm not going to allow it. It was requested in discovery, it was not forthcoming, it was not - has been requested even as late as last week or so, and I don't think that based on what I understand the discovery request to be, the Court determines whether or not something is going to be admissible at trial if there's an issue.

But I am a big supporter of very broad discovery. No one ever came to this Court and sought any ruling, and I don't think that you can argue work product if your expert's now testified before this jury that he looked at that, and understanding what he believed the facts of this case were.

During this point of the trial, the Court indicated that the statements could not be used and jury was brought back into the Courtroom. At this point, Mr. Dunn, counsel for Mr. Dreher, asked the Court the following questions:

(Witness resumes the stand)

MR. DUNN: Your Honor, can we approach the bench? I have a question.

THE COURT: Yes, sir. Wait a minute. We've got the jury coming in, but yeah, that's fine. Whatever, sir.

(Bench conference on the record, jury enters courtroom)

MR. DUNN: I don't want to run afoul of the Court's ruling. I mean, I had that chance to look at the statement and I understand the Court's ruling.

But for example, in this statement, this witness said that he told the officer that the gentleman that was from out-of-state that was turned away had a Texas driver's license.

9

I think he's already testified here, he testified in his deposition he turned the gentleman away who had a South Carolina driver's license. Ironically, my client's from South Carolina.

Are we prohibited from asking this witness, "Have you ever told anybody that you turned somebody away because they had a Texas driver's license?"

And then if he says no, you know, if he either lies or he just says no, we can't use that statement to impeach him, but can we at least ask the question, you know, "Haven't you told somebody else previously something that's in that statement?"

MR. GRIFFITH: I think it goes to the heart of the statement.

MR. DUNN: I mean, his testimony.

. . .

This says that the statement -- . . . -- the gentleman was there for three or four hours.

THE COURT: Right. But you know, you all are all -- and that's part of the problem here is no one had the benefit of any of this as discovery, and so here we are now, frankly, worse than the 11th hour, hearing something for the very first time that may have been very pertinent to the way you've structured your defense.

I don't think it's fair game, frankly. Because basically, you're approaching the bench with information that you just got within the last five minutes.

MR. DUNN: Uh-huh.

THE COURT: Based on the statement you've seen for the first time.

MR. DUNN: Yes.

THE COURT: No. I'm sorry. I don't think it's appropriate to do that unless you all want to send the jury back out and we'll talk about it some more. I really don't mind.

10

MR. DUNN: I think we should.

THE COURT: Thinking it through some more.

MR. GRIFFITH: I'm just going to start arguing perhaps he's lying, Judge. I mean --

MR. DUNN: I think it --

MR. GRIFFITH: -- it wasn't proven in discovery, but it's whatever you want to do.

MR. DUNN: I think it's a very important issue in this case based upon what it is, so I mean, I think it merits at least discussion on the record.

THE COURT: Okay.

. . .

MR. DUNN: Well, Your Honor, I've had a chance to look at the statement and I understand the Court's ruling concerning the use of the statement, I understand the plaintiff's argument that this statement is not going to be offered as evidence.

I also completely understand the fact that the defendants have asked for statements of witnesses previously haven't been presented.

THE COURT: Are you also in that discovery issue? Were you asked for statements?

MR. GRIFFITH: He did, Your Honor.

MR. DUNN: I'm positive. I mean, I can't tell you I can quote my written discovery request. That's a standard question I put in every set of written discovery in every case. I'm sure I did.

MR. GRIFFITH: Your Honor, I pulled theirs, too. It's in yours, too. Also, for the experts' files.

MR. DUNN: My point is just simply, as I brought to the Court's attention up at the bench, that I think even if the

11

statement can't be offered to impeach the witness and the plaintiffs aren't going to bring in Mr. Kidd[2] to testify or someone else to provide some rebuttal, which I guess they could do, but I think at a minimum the witness should be allowed to be asked whether or not he has made a statement or told another individual.

For example, you know, "Have you told another individual this person you turned away with an out-of-state license on this day in question had a Texas license?" Because that's what this statement says.

My client has a South Carolina license. This statement, the witness said that my client was in the bar, or that individual, that my client was in the bar for two to three hours.

In his deposition, and I believe he'll testify here, that and the inference is he turned my client away and then my client wasn't even in the bar. That's what they're going to argue.

So I believe at least at a minimum he should be allowed to be asked has he made these statements or has he given this factual piece of information to anyone and see how he responds.

And whether or not, you know, asking this question runs afoul of the Court's ruling about the use of this document for impeachment purposes.

I guess my entire point is based upon what I believe is somewhat fundamental fairness, this appears to be a very, very key piece of information that would go to the heart of this claim against the bar which is certainly the majority of what this evidence in this whole trial has been about.

I think somehow this – and I do believe it was an error. I do believe this document should have been produced. I believe it should have been produced when it was asked for last week, but at a minimum, I guess, we have the statement now. We can review it.

We can prepare for the examination of this witness with it, and at a minimum, you know, maybe some, maybe we can, maybe we seek a continuance until tomorrow after this evidence is presented and someone bring in rebuttal witness to attack what he testifies to.

_____

[2] As indicated previously, Mr. Kidd is the private investigator who took the statement from Mr. Carpenter.

. . .

THE COURT: That's what I think, and that's where I think there is fundamental fairness, a fundamental fairness issue.

Frankly, I don't even know how you can take a written something that's alleged to have been typed from some kind of a recording that nobody's seen, either, and try to use it in the courtroom, either.

I don't think that - if this is something taken from some recording, we think, which we frankly don't even know, I don't know, and somebody else has typed it, wasn't the person who recorded it, I'm even thinking it's getting more and more suspect.

And that's frankly why we have discovery and we don't do things like this at trial.

Certainly don't have some gazillion dollar paid expert to come in who says they've seen it and the defense counsel have never seen it, and the defense counsel couldn't even properly question your expert at a deposition, frankly, because they never had the benefit of what the expert had reviewed for purposes of the deposition.

I mean, we can unwind this a whole lot. Much less what the trial testimony is and what they relied on is what they believe are the facts, which we don't even know if they are the facts.

MR. CURNUTTE: Your Honor, we won't use this statement at all then. We can call Michael Kidd as rebuttal witness.

. . .

THE COURT: Well, they're withdrawing their request to even use it, so that's where we're going to stay.

But that's not with any understanding from me that that's going to be proper rebuttal evidence, so that may be argument for another day. I don't know.

For now, we're going to try to get through the end of this trial. Do you need a break, Madam Court Reporter?

Although Anderson's counsel stated that he would introduce the information during rebuttal by calling the investigator, Mr. Kidd, he never made any attempt to offer any rebuttal testimony at the close of JES's case-in-chief. Dreher did not

13

object or otherwise attempt to elicit any testimony regarding the alleged recorded statement made by Carpenter once Anderson withdrew the request to impeach.

Following trial, both Anderson and Dreher filed separate motions requesting a new trial. Both argued that the circuit court had committed error in excluding the prior inconsistent statement of Carpenter. Anderson argued that he had no duty to supplement discovery and provide defendants with Carpenter's prior statement while it was privileged work product; that the ruling was contrary to Rule 613 of the West Virginia Rules of Evidence[3]; and that refusal to allow Anderson to question Carpenter was a miscarriage of justice, as Carpenter was a key witness in the trial.

JES filed an omnibus response to both motions and argued that the record of the trial reflects that there was no "ruling" made by the Court which was the subject of both motions for a new trial. JES claimed that both Dreher and Anderson created the alleged error, and thus, they should not prevail. JES contended that even if a ruling had been issued by the Court, it would not have been error for the Court to exclude the evidence upon finding that plaintiff Anderson was required to supplement discovery with the alleged statement of Carpenter after providing that statement to plaintiff's expert witness to formulate an opinion. Additionally, JES argued that even if a ruling had been issued, it would not have been error to limit cross-examination of Carpenter under Rule 613 as the alleged statement had been specifically requested by opposing counsel during discovery. JES also argued that there was no attorney work product to documents once they have been reviewed by a witness. Anderson replied that the circuit court did in fact issue a ruling prohibiting the use of the statement and that the error was not created by him.

On June 19, 2012, the circuit court entered an order denying both Anderson and Dreher's respective motions for a new trial. The circuit court found that it never made a ruling on the issue due to the concession by Anderson's counsel who stated, "your Honor, we won't use this statement at all then. We can call Michael Kidd (the investigator) as a rebuttal witness." The circuit court found that because there was no ruling, there could be no error. The circuit court noted that discovery was sought by JES and Dreher with regard to the statements that plaintiff may have taken. Although Anderson objected claiming work product privilege, it became clear at trial that Anderson's expert had reviewed the statement and the information used by the expert was discoverable once it was disclosed to him. The court found that even if it had issued a ruling excluding the use of the statement, it would have been an appropriate sanction as the statement was not disclosed during discovery. The court found that the situation was

---

[3] Rule 613(a) of the West Virginia Rules of Evidence provides, "[i]n examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel."

14

created by Anderson. Additionally, the court found that Dreher argued at trial that by virtue of Anderson giving the statement to his expert witness, the statement no longer remained protected work product, and, thus, Dreher could not succeed on a motion for a new trial involving an alleged error that he helped to create.

The circuit court also found that even if it had made a ruling limiting the cross-examination of Carpenter, it would have been completely appropriate given the nature of Rule 26 of the West Virginia Rules of Civil Procedure.[4] Also, the court found that at least twice prior to trial, counsel for defendants specifically requested that plaintiff's counsel provide copies of the statement and those requests went unanswered and the statement was never provided. Thus, the requirements of Rule 613 of the West Virginia Rules of Evidence, which requires that the statement of a witness shall be shown

---

[4] Rule 26(b)(4)(A)(i) of the West Virginia Rules of Civil Procedure provides, "[a] party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." With regard to the disclosure requirements of Rule 26, commentators have stated as follows:

> Under Rule 26(b)(4)(A)(i) a party may use interrogatories to require an opposing party to (1) identify each person whom the other party expects to call as an expert witness at trial, (2) to state the subject matter on which the expert is expected to testify, and (3) to state the substance of the facts and opinions to which the expert is expected to testify, along with a summary of the grounds for each opinion. The primary purpose of this required disclosure is to permit the opposing party to prepare an effective cross-examination. A prohibition against discovery of information, including facts and opinions, held by expert witnesses produces in acute form the very evils that discovery has been created to prevent. A lawyer even with the help of his/her own expert frequently cannot anticipate the particular approach the opponent's expert will take or the data on which the expert will based his/her judgment. Consequently, a litigant is entitled automatically and without prior judicial approval to substantial, though not complete discovery from the expert who expectably will be used at trial.

See Cleckley, F.; Davis, J.; Palmer, Jr., L; *Litigation Handbook on West Virginia Rules of Civil Procedure,4th Ed.*, Rule 26 § 26(b)(4), p. 730 (citations omitted).

or disclosed to opposing counsel upon request, were not met. Lastly, the court found that the jury is the sole judge as to the weight of the evidence and the credibility of the witnesses and, thus, it found that Dreher's motion for a new trial should be denied.

In this appeal, Dreher argues that the circuit court incorrectly concluded that it never made a ruling on the issue during trial because the parties understood that the court was going to prohibit its use. Dreher also argues that the circuit court erred in finding that the statement could not be used for impeachment purposes under Rule 613 of the West Virginia Rules of Evidence. Dreher argues that proper sanction should have been against only the plaintiff for failing to disclose the statement under Rules 26 and 34 of the West Virginia Rules of Civil Procedure, not Dreher. He also contends that the circuit court erred in finding that the exclusion of the statement only went to Carpenter's credibility.

In a brief summary response, Anderson argues that he did not have a duty to supplement his discovery responses because they were correct when he responded and the statement did not yet exist, and because JES never served a formal discovery request for the statement, and because the statement was attorney work product. Anderson likewise argues that the circuit court erred when it ruled that plaintiff could not use the statement for impeachment purposes under Rule 613. He argues that the appropriate sanction was to prohibit his expert from testifying about the statement, which the circuit court did. He also argues that the statement was more probative than prejudicial, and thus, should not have been barred under Rule 403 of the West Virginia Rules of Evidence.

Conversely, JES responds that Dreher has failed to prove any error because the circuit court never made an actual ruling. JES also argues that Dreher failed to preserve the issue for appeal because he did not attempt to cross-examine Carpenter. JES also asserts that Dreher aided in the error by arguing that the statement should not be permitted at trial because there was not an expert work production exception. JES contends that even if there was a ruling, the court properly limited cross-examination under Rule 613 because JES repeatedly requested the statement and the witness was even questioned about the statement during his deposition, and it was never provided.

Upon review of the record before us, we find no error meriting a new trial. The trial transcript reveals that although the issue of impeachment was debated at length, the culmination of the lengthy discussions resulted in Anderson's counsel voluntarily withdrawing his attempt to impeach Carpenter with his recorded statement. Thus, the circuit court did not make any ruling on the cross-examination issue as a result of the concession of Anderson's counsel who stated on the record, "[y]our Honor, we won't use this statement at all then. We can call Michael Kidd as a rebuttal witness." The circuit court specifically acknowledged Anderson's withdrawal by stating, "[w]ell, they're withdrawing their request to even use it, so that's where we're going to stay."

16

However, even if the circuit court made an affirmative ruling on the cross-examination issue, we find that Dreher failed to preserve the issue for appeal. Although Dreher's counsel sought clarification from the circuit court prior to Anderson's withdrawal of the request to impeach regarding whether he could ask Carpenter if he told another individual that the person he turned away on the night of the accident had a Texas driver's license, Dreher did not object or otherwise attempt to elicit any testimony regarding the alleged recorded statement made by Carpenter after Anderson's withdrawal. Unfortunately, Anderson's counsel never called Mr. Kidd, the private investigator, as a rebuttal witness.

This Court has "continuously stated that to preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect." Syl. Pt. 2, in part, *State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 470 S.E.2d 162 (1996). This Court has further explained:

> The Rule in West Virginia is that parties must speak clearly in the circuit court, on pain that, if they forget their lines, they will likely be bound forever to hold their peace. . . It must be emphasized that the contours for appeal are shaped at the circuit court level by setting forth with particularity and at the appropriate time the legal ground upon which the parties intent to rely.

*Id.* at 216, 470 S.E.2d at 170 (citation omitted).

Furthermore, it is well settled law in West Virginia that

> [a] [party] must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.

Syl. Pt. 2, *WV Dept. of Health & Human Res. Emps. Fed. Credit Union v. Tennant*, 215 W. Va. 387, 599 S.E.2d 810 (2004) (*quoting* Syl. Pt. 5, *Morgan v. Price*, 151 W. Va. 158, 150 S.E.2d 897 (1966)); *see also State v. Browning*, 199 W. Va. 417, 485 S.E.2d 1 (1997) ("This Court will not consider an error which is not properly preserved in the record nor apparent on the face of the record.").

Based on the foregoing, we conclude that the June 19, 2012, order of the Circuit Court of Kanawha County denying Dreher's motion for a new trial should be affirmed.

Affirmed.

ISSUED: November 14, 2013

CONCURRED IN BY:

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry, II