# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**April 7, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**R & D TOWING, INC., and
TRI-COUNTY TOWING LLC,
Plaintiffs Below, Petitioners**

**v.) No. 25-ICA-259**       (Cir. Ct. of Summers Cnty. Case No. CC-45-2020-C-5)

**UNITED FINANCIAL CASUALTY COMPANY,
Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioners R & D Towing, Inc. ("RDT") and Tri-County Towing LLC ("Tri-County") appeal the May 27, 2025, order from the Circuit Court of Summers County, which granted Respondent United Financial Casualty Company's ("United") motion for summary judgment. United filed a response.[1] Petitioners did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

RDT was incorporated as a West Virginia corporation on July 17, 2013, and engaged in the towing and recovery business. Ronald Cook was listed as RDT's President and only shareholder. According to the West Virginia Secretary of State's records, RDT's corporate status was terminated on June 24, 2021. Tri-County was formed as a West Virginia limited liability company on December 27, 2018. According to the West Virginia Secretary of State's records, Tri-County is not a successor to RDT.[2]

On April 7, 2015, RDT purchased a 2001 Peterbilt 378 (the "Peterbilt") for $185,000 and received the Peterbilt's certificate of title from the West Virginia Division of

---

[1] Petitioners are represented by Anthony M. Salvatore, Esq. United is represented by Susan R. Snowden, Esq.

[2] Our recitation of the facts relies extensively on the circuit court's findings of undisputed fact that petitioners do not challenge on appeal.

1

Motor Vehicles on June 12, 2015. In June 2016, flash flooding damaged, among other things, RDT's offices and the Peterbilt.

RDT repaired the Peterbilt and returned it to service approximately three to four days after the flood. Thereafter, on June 23, 2016, RDT submitted an insurance claim for the cost of repairing the Peterbilt. At the time of this claim, KBK Insurance Group, Inc. was RDT's insurance provider. RDT received an insurance payout of approximately $100,000 for its claim.

On September 20, 2017, United issued a Commercial Automobile Insurance Policy (the "Policy") to RDT with effective dates from September 30, 2017, to September 30, 2018. The Policy was obtained through Energy Insurance Agency, Inc. ("Energy Insurance"). The Peterbilt was listed on the auto coverage schedule of the Policy for $185,000, subject to a $1,000 deductible.

On the morning of February 26, 2018, Mr. Cook learned that the Peterbilt had been vandalized while parked in RDT's garage (the "Incident"). After arriving at the garage and inspecting the damage, Mr. Cook contacted 911 Emergency Services, the West Virginia State Police, and Energy Insurance. Law enforcement responded to the scene and observed that the Peterbilt's tires were sliced, its electronic controls were destroyed, and its engine components and structural integrity had been compromised.

On February 26, 2018, Energy Insurance submitted a claim to United regarding the Peterbilt's damage from the Incident (the "Peterbilt Claim"). Upon United's receipt of the Peterbilt Claim, it was assigned to Claim Representative Elana Wells. On February 27, 2018, Ms. Wells contacted Mr. Cook at which time they discussed the Incident and scheduling the Peterbilt for claim inspection.[3]

During the claim process, Mr. Cook came under investigation for insurance fraud related to the Incident. Due to the investigation, Mr. Cook informed United on March 5, 2018, that he was withdrawing the Peterbilt Claim. United closed the claim on March 6, 2018. Following the investigation, a criminal complaint was filed against Mr. Cook in Greenbrier County on March 30, 2018, alleging two counts of insurance fraud, one count of fraudulent schemes, and one count of falsely reporting an emergency. Mr. Cook was arrested and released on bond on April 2, 2018. On October 25, 2019, Mr. Cook's criminal charges were dismissed without prejudice.

---

[3] During this conversation, Mr. Cook described the extent of the Peterbilt's damage to Ms. Wells. He explained that vandals had poured sugar into the engine and fuel tanks; used a torch to cut the frame; smashed all the lights; and slashed all its tires. Mr. Cook further reported that multiple tools and equipment were taken from the shop including but not limited to generators and welding machines.

On December 3, 2019, petitioners' counsel sent a letter to United, seeking the status of the Peterbilt Claim. The claim had remained closed since Mr. Cook's request in March 2018. On December 16, 2019, United unsuccessfully attempted to contact petitioners' counsel concerning the Peterbilt Claim. On December 17, 2019, United received a voicemail from said counsel who stated that Mr. Cook wished to reopen the Peterbilt Claim because his criminal charges were dismissed. Thereafter, United reopened the claim and assigned it to claim representative Pamela Mausser.

On December 20, 2019, Ms. Mausser sent counsel a letter requesting that he send her documentation related to the Peterbilt Claim. Ms. Mausser attempted to reach counsel about the claim on December 30, 2019, but he was not available. Thereafter, Ms. Mausser sent counsel an email and upon counsel's request, provided him with a certified copy of the Policy. Ms. Mausser was unsuccessful in her later attempts to contact petitioners' counsel regarding the Peterbilt Claim on January 2, 2020, and January 3, 2020. In response, on January 3, 2020, Ms. Mausser sent a letter to counsel, stating that she had been trying to reach him regarding the Peterbilt Claim as it was necessary in order to continue processing the claim. Ms. Mausser also tried to contact counsel on January 7, 2020, but he was not available. On January 8, 2020, counsel telephoned Ms. Mausser and confirmed that his client wanted to move forward with the Peterbilt Claim.

Approximately thirty-seven days after the Peterbilt Claim was reopened, petitioners sued United on January 24, 2020, alleging claims related to United's handling of the Peterbilt Claim. Petitioners' counsel informed Ms. Mausser of this litigation through an email dated February 4, 2020.

Ms. Mausser was likewise unsuccessful in her attempts to contact counsel regarding the Peterbilt Claim on February 13, 2020, and February 14, 2020. On February 14, 2020, Ms. Mausser left counsel a voicemail and sent him an email again expressing the need to speak to counsel in order to process the claim.

On February 17, 2020, the Peterbilt Claim was reassigned to United claim representative Guadalupe H. Soto. Mr. Soto attempted to contact petitioners' counsel by telephone on February 26, 2020, but was unsuccessful and counsel's voicemail was not accepting messages at that time. On February 26, 2020, Mr. Soto sent correspondence to counsel requesting to speak with counsel about the claim. Mr. Soto also requested that counsel provide photos of the Peterbilt's damage, repair estimates for the alleged damages, proof of payment for any repairs, and the current location of the Peterbilt.

On March 2, 2020, Mr. Soto and petitioners' counsel exchanged emails and spoke by phone concerning the Peterbilt Claim. Counsel informed Mr. Soto that the Peterbilt was being stored in RDT's garage, and that his client viewed the Peterbilt to be a total loss. At that time, Mr. Soto and counsel discussed scheduling an inspection. Thereafter, United requested further documentation from counsel, which was summarized in a letter dated

March 19, 2020. United maintained that the requested information was necessary for both the Peterbilt Claim adjustment and for United's counsel in the underlying litigation.

On March 20, 2020, petitioners filed an amended complaint, which alleged that United: (1) failed to honor the insurance contract with petitioners and pay the claim; (2) failed to give any reason for a denial of this claim; (3) failed to promptly respond to petitioners' claim correspondence; (4) failed to advise petitioners of its right to appeal to the West Virginia Offices of the Insurance Commissioner; (5) violated the West Virginia Unfair Trade Practices Act ("UTPA") and related regulations;[4] and (6) committed statutory and common law bad faith.

RDT did not provide the requested information for several months. Instead, on January 5, 2021, United's litigation counsel sent petitioners' counsel a letter, which acknowledged United's first receipt of information and stated, in part:

> Thank you for providing the most recent information to United Financial Casualty Company ("United Financial") regarding the valuation of your client's truck in this matter. **Please note that for the first time, based upon you having provided the bill of sale, United Financial was provided with a full description to include the specific make, model, body and more detailed information with regard to the subject vehicle. Prior to that, your client had not provided specific detailed information to his insurance carrier, allowing it to accurately value the claim.** I would again call to your attention the fact that in your client's prior claim, which was made in this case, he withdrew the claim. **At no time did United Financial deny the claim.**

(emphasis added).

Eventually, the parties engaged in settlement negotiations regarding the Peterbilt Claim. The parties' counsel exchanged a series of letters and emails between March 8, 2021, and March 18, 2021. Ultimately, the parties settled the Peterbilt Claim, and United paid the Peterbilt's listed Policy value of $185,000.

On January 4, 2024, United filed its motion for summary judgment wherein it contended that Tri-County lacked standing to pursue the claims raised in the amended complaint, and that RDT failed to establish that United acted in bad faith under the UTPA, common law, or applicable regulations. United further asserted that RDT was not entitled

---

[4] *See generally* W. Va. Code §§ 33-11-1 to -10 and W.Va. Code R. §§ 114-14-1 to -10.

to *Hayseeds* damages.[5] Petitioners filed a response opposing the motion and United filed a reply. On May 27, 2025, the circuit court entered the order presently on appeal.

Relevant to this appeal, the circuit court found that petitioners' UTPA claim for unfair claim settlement practices is governed by West Virginia Code § 33-11-4(9) (2002), which states, in part:

No person shall commit or perform with such frequency as to indicate a general business practice any of the following:

(a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue; (b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies; (c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; (d) Refusing to pay claims without conducting a reasonable investigation based upon all available information; (e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed; (f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; (g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered; (h) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application; (i) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured; (j) Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made; (k) Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration; (l) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information; (m) Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements

---

5 *See* Syl. Pts. 1 and 2, *Hayseeds, Inc. v. State Farm Fire & Cas. Co.*, 177 W. Va. 323, 352 S.E.2d 73 (1986).

under other portions of the insurance policy coverage; (n) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement[.]

The circuit court further noted that in order to prevail on a UTPA claim, an insured cannot rely solely on an insurer's isolated violation of West Virginia Code § 33-11-4(9), but rather, it must be demonstrated that an insurer violated the statute with such frequency as to indicate a "general business practice" thereunder. *See* Syl. Pt. 3, *Dodrill v. Nationwide Mut. Ins. Co.*, 201 W. Va. 1, 491 S.E.2d 1 (1996) (citation modified) ("More than a single isolated violation of West Virginia Code § 33-11-4(9), must be shown in order to meet the statutory requirement of an indication of a general business practice, which requirement must be shown in order to maintain the statutory implied cause of action.").

Applying those principles to the present case, the circuit court determined that petitioners had produced no evidence to demonstrate that United violated the subject statute. Particularly, the court found that there was no evidence to establish United's conduct was more than an isolated event and, thus, could not meet the statutory threshold of a "general business practice." The circuit court also found no merit in petitioners' contention that they had a viable cause of action because United delayed the processing of their claim. The court found this theory untenable based upon the undisputed facts of the case. Particularly, the court explicitly found that petitioners' own conduct delayed the processing and settlement of the Peterbilt Claim. Here, the court highlighted United's several unsuccessful attempts to contact petitioners' counsel and obtain pertinent claim information. The court also noted the fact that petitioners did not provide United with necessary claim information until on or about January 5, 2021, almost a full year after petitioners filed their original complaint. Similarly, the court rejected petitioners' parallel argument that United was required to settle their claim within thirty days. Specifically, the court found that no such requirement existed under the plain language of the UTPA and relevant state regulations, petitioners offered no authority to support their contention, and that petitioners' subjective belief that the Peterbilt Claim took "too long" to process was not a valid basis for relief. [6]

Ultimately, the circuit court determined that there was no factual basis to support the allegations asserted by petitioners in their amended complaint. The court found that United had not violated any statutory, regulatory, or common law provision with respect to its handling of the Peterbilt Claim, and accordingly, entered summary judgment in favor of United and this appeal followed.

---

[6] The circuit court also found that Tri-County lacked standing with respect to the underlying claims. Petitioners do not challenge that ruling in this appeal.

In West Virginia, it is well established that our standard of review in this matter is de novo. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."). In conducting a de novo review, this Court applies the same standard for granting summary judgment that a circuit court must apply, and that standard states, "a motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *Id.* at 190, 451 S.E.2d at 756, syl. pt. 2 (citation modified). "Summary judgment is appropriate if, from the totality of the evidence presented . . . the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995). "[T]he party opposing summary judgment must satisfy the burden of proof by offering more than a mere scintilla of evidence and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Id.* at 60, 459 S.E.2d at 337 (citation modified).

As petitioners' lone assignment of error on appeal, they offer the overarching contention that the circuit court erred because it granted summary judgment in the face of genuine issues of material fact. According to petitioners, these facts establish their common law bad faith and UTPA claims. The Court finds petitioners' argument unconvincing. Rather, we conclude that petitioners have failed to articulate error for appellate review.

Here, the argument section of petitioners' brief consists of about five pages, which predominantly consists of several long block quotations, some of which are offered without proper citation to the authority from which they are derived. Moreover, petitioners' argument contains no analysis applying those authorities to the facts of this case or citation to the record, as required. At best, petitioners present skeletal arguments, which lack any reasonable specificity or meaningful explanation. *See State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (citation modified) ("A skeletal argument, really nothing more than an assertion, does not preserve a claim."); *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal."); W. Va. R. App. P. 10(c)(7) ("The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Intermediate Court . . . may disregard errors that are not adequately supported by specific references to the record on appeal.").[7] Furthermore, as our Supreme Court of Appeals has held:

---

[7] The Court notes that it previously reminded petitioners' counsel of the requirements of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure in a different appeal. *See R&D Towing, Inc. v. Plaza Ins. Co.*, No. 23-ICA-243, 2024 WL 3252731, at *4 n.2 (W. Va. Ct. App. July 1, 2024) (memorandum decision).

An appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.

Syl. Pt. 5, *Morgan v. Price*, 151 W. Va. 158, 150 S.E.2d 897 (1966).

In this appeal, petitioners' cursory arguments fail to offer any indication of reversible error in the circuit court's judgment. Therefore, because petitioners have failed to carry their burden of establishing error below, we decline to disturb the court's decision to grant summary judgment and affirm its May 27, 2025, order.

Accordingly, we affirm.

Affirmed.

**ISSUED:** April 7, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White